AO 440 (Rev. 02/09)  Summons in a Civil Action

JUDGE BATTS

# UNITED STATES DISTRICT COURT
for the

Southern District of New York

09 CIV 7400

| | |
|---|---|
| MARIA VILLAR | ) |
| _____ | ) |
| *Plaintiff* | ) |
| | ) |
| v. | ) |
| CITY OF NEW YORK, NEW YORK CITY | ) |
| POLICE DEPARTMENT, POLICE COMMISSIONER | ) |
| RAYMOND KELLY, et al *Defendant* | ) |

Civil Action No.

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

   SEE ATTACHED

A lawsuit has been filed against you.

Within 20 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

J. MICHAEL McMAHON

AUG 2 1 2009

CLERK OF COURT

Date: _____

_____
*Signature of Clerk or Deputy Clerk*

City of New York
C/o New York City Law Department
100 Church Street
New York, New York   10007
New York County

Raymond Kelly
New York City Police Commissioner
New York City Police Department
One Police Plaza
New York, New York   10038

Deputy Inspector Michael Yanosik
Building Maintenance Section
59-06 Laurell Hill Boulevard
Woodside, New York

Deputy Commissioner Neldra Zeigler
New York City Police Department
OEEO
One Police Plaza
New York, New York   10038

Police Officer Kelvin McKoy
Queens Criminal Court/Queens Central Booking
125-01Queens Boulevard
Kew Gardens, New York  11415

Captain Timothy Kerr
Internal Affairs Bureau
315 Hudson Street
New York, New York

Lt. John P. McGovern
Internal Affairs Bureau
315 Hudson Street
New York, New York

Lt. Joseph Ferrara
Internal Affairs Bureau
315 Hudson Street
New York, New York

Lt. Fuat Sarayli
Internal Affairs Bureau

315 Hudson Street
New York, New York

Sgt. Brian McNulty
Queens South Narcotics


Sgt. Kesha Johnson
Internal Affairs Bureau
315 Hudson Street
New York, New York

Det. Luis Mienert
Queens South Narcotics

JUDGE BATTS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

'09 CIV 7400

-------------------------------------------X
MARIA VILLAR,

                        Plaintiff,                    COMPLAINT
                                                      WITH JURY DEMAND

        -against-

CITY OF NEW YORK, NEW YORK CITY POLICE
DEPARTMENT, POLICE COMMISSIONER
RAYMOND KELLY, in his official capacity,
DEPUTY INSPECTOR MICHAEL YANOSIK,
Individually and in his Official capacity,
DEPUTY COMMISSIONER NELDRA ZEIGLER, OEEO,
Individually and in her official capacity,
CAPTAIN TIMOTHY KERR, individually and
In his official capacity, LIEUTENANT
JOHN P. MCGOVERN, individually and in
His official capacity, LIEUTENANT JOSEPH
FERRARA, individually and in his official
Capacity, LIEUTENANT FUAT SARAYLI, individually
And in his official capacity, SERGEANT
BRIAN MCNULTY, individually and in his
Official capacity, SERGEANT KESHA JOHNSON,
Individually and in her official capacity,
DETECTIVE LUIS MIENERT, individually and in
His official capacity, POLICE OFFICER
KELVIN MCKOY, individually and in his
Official capacity,



                        Defendants.
-------------------------------------------X

        Plaintiff, MARIA VILLAR ("VILLAR"), by and through her

attorneys, the law firm of CRONIN & BYCZEK, LLP, as and for

her Complaint against Defendants, respectfully sets forth

the following:

                        NATURE OF ACTION

        1.   This action is hereby commenced for the purpose

of seeking to secure protection of, and to redress the

deprivation of, rights secured by the United States Constitution, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 1981, 42 U.S.C. § 1983, 42 U.S.C. § 1985, New York State Executive Law § 296, and New York City Human Rights Law § 8-107 et. seq., providing for relief based upon Defendants' unlawful employment practices of engaging in discrimination based upon Plaintiff's gender and race, and for retaliation against Plaintiff for engaging in the protected activity of formally complaining of said discrimination.

<u>JURISDICTION</u>

2.    The jurisdiction of this Court is invoked based upon federal questions and pursuant to the Constitution of the United States, the New York State Constitution, 28 U.S.C. §§ 1343(3) and (4), 28 U.S.C. § 1331, as well as 42 U.S.C. § 2000e through § 2000e (15).

3.    This Court has supplemental jurisdiction over the federal claims pursuant to 28 U.S.C. § 1367.

4.    Jurisdiction is also invoked under the doctrine of pendant jurisdiction with respect to any and all state claims set forth in all counts.

5.    The rights, privileges and immunities sought herein to be redressed are those secured by the First Amendment freedom of speech and by the equal protection and

2

due process clauses of the Fourteenth Amendment of the United States Constitution, and provisions against gender and race discrimination and retaliation in employment based upon Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 1981, 42 U.S.C. § 1983, 42 U.S.C. § 1985, along with applicable provisions of the New York State Constitution, New York State Executive Law and New York City Human Rights Law.

## SATISFACTION OF PREREQUISITES UNDER TITLE VII

6.    On or about November 25, 2008, Plaintiff VILLAR, in accordance with applicable law, filed a Verified Complaint with the United States Equal Employment Opportunity Commission ("EEOC"), Charge No.: 520-2009-00817 which organization receives and investigates charges of discrimination as set forth by the Federal Anti-Discrimination Laws, including Title VII of the Civil Rights Act, as amended.   The Complaint was jointly filed with the New York State Division of Human Rights.

7.    Said Verified Complaint charged that Defendants engaged in unlawful employment discrimination practices based upon gender and race and in retaliation for engaging in protected activity.

8.    On May 22, 2009, the EEOC issued a "Right to Sue" Letter advising Plaintiff of the completion of her

3

prerequisites to file suit in federal court. Plaintiff received said a "Right to Sue" Letter on May 28, 2009. A copy of the "Right to Sue" Letter issued to Plaintiff ROSENTHAL is annexed hereto as **Exhibit "A"**.

<u>VENUE</u>

9. Venue is proper within the Southern District of this Court, City of New York, State of New York, as the course of Defendants' conduct took place within the boundaries of the County of New York, State of New York, and the instant causes of action are based upon violations of the New York State Constitution, New York State Executive Law and New York City Human Rights Law.

<u>PARTIES</u>

10. Plaintiff MARIA VILLAR is a Hispanic female citizen of the United States and a resident of Queens County, State of New York. She has registered her opposition to the discriminatory practices of Defendants and, thus, is a member of a protected class. At all times relevant to this action, Plaintiff VILLAR was a uniformed member of the New York City POLICE DEPARTMENT from 1995 until April 7, 2009. She last held the position of Lieutenant.

11. Defendant City of New York (hereinafter referred to as "NYC") is a municipal corporation duly organized

4

under the laws of the City and State of New York, having its place of business within the City of New York, and including as its function, operating, managing and financing the New York City Police Department.

12. Upon information and belief, the New York City Police Department (hereinafter referred to as "NYPD") operates under the direct authority of NYC, and is the official NYC agency charged with law enforcement and investigative duties throughout New York City, and maintains control offices at One Police Plaza, New York, New York, along with satellite offices and precincts throughout the City of New York.

13. Defendant Raymond Kelly (hereinafter referred to as "KELLY"), at all times relevant to this Complaint, was the Commissioner of the NYPD, the Chief Executive of the NYPD and Plaintiff's superior officer. As the Commissioner, he was also the principal administrator of the NYPD. Defendant KELLY, in his capacity as Commissioner, was responsible for the overall policies of the NYPD, including the institution and application of departmental rules. Defendant KELLY was responsible for the conduct of all police personnel operating under his command, including but not limited to, all of the individual NYPD defendants, and is responsible for assuring that all officers comport

5

themselves consistently with the Constitution of the United States and all State, Federal and local laws.

14. Defendant DEPUTY COMMISSIONER NELDRA M. ZEIGLER (hereinafter referred to as "ZEIGLER"), at all times relevant to this complaint, was a DEPUTY COMMISSIONER at the NYPD OFFICE OF EQUAL EMPLOYMENT OPPORTUNITY. At all times relevant, DEPUTY COMMISSIONER ZEIGLER is sued in her individual and official capacities.

15. Defendant DEPUTY INSPECTOR MICHAEL YANOSIK (hereinafter referred to as "YANOSIK"), at all times relevant to this complaint, was an NYPD Deputy Inspector and Plaintiff's superior officer. At all times relevant, DEPUTY INSPECTOR YANOSIK is sued in his individual and official capacities.

16. Defendant CAPTAIN TIMOTHY KERR (hereinafter referred to as "KERR"), at all times relevant to this complaint was an NYPD Internal Affairs Bureau Investigator. At all times relevant, KERR is sued in his individual and official capacities.

17. Defendant LIEUTENANT JOHN P. MCGOVERN (hereinafter referred to as "MCGOVERN") at all times relevant to this complaint was an NYPD Internal Affairs Bureau Investigator. At all times relevant, MCGOVERN is sued in his individual and official capacities.

6

18. Defendant LIEUTENANT JOSEPH FERRARA (hereinafter referred to as "FERRARA") at all times relevant to this complaint was an NYPD Internal Affairs Bureau Investigator. At all times relevant, FERRARA is sued in his individual and official capacities.

19. Defendant LIEUTENANT FUAT SARAYLI (hereinafter referred to as "SARAYLI") at all times relevant to this complaint was an NYPD Internal Affairs Bureau Investigator. At all times relevant, SARAYLI is sued in his individual and official capacities.

20. Defendant SERGEANT BRIAN MCNULTY (hereinafter referred to as "MCNULTY") at all times relevant to this complaint was an NYPD Sergeant assigned to Queens Narcotics Major Case Squad. At all times relevant, MCNULTY is sued in his individual and official capacities.

21. Defendant SERGEANT KESHA JOHNSON (hereinafter referred to as "JOHNSON") at all times relevant to this complaint was an NYPD Internal Affairs Bureau Investigator. At all times relevant, JOHNSON is sued in his individual and official capacities.

22. Defendant DETECTIVE LUIS MIENERT (hereinafter referred to as "MIENERT") at all times relevant to this complaint was an NYPD Detective assigned to Queens

7

Narcotics Major Case Squad. At all times relevant, MIENERT is sued in his individual and official capacities.

23. Defendant POLICE OFFICER KELVIN MCKOY (hereinafter referred to as "MCKOY") at all times relevant to this complaint was an NYPD Police Officer and assigned to the Queens Criminal Court/Queens Central Booking. At all times relevant, MCKOY is sued in his individual and official capacities.

FACTS UNDERLYING PLAINTIFFS' CLAIMS

24. At all times relevant to this Complaint, Plaintiff VILLAR is a Hispanic female employed by the NYPD, holding the rank of Lieutenant.

25. Plaintiff's date of appointment was January 30, 1995.

26. Throughout Plaintiff VILLAR's employment with the NYPD, and prior to Defendants' retaliation against her, she has always had an exemplary performance record, maintaining evaluations of "superior/outstanding."

27. At the time of the events complained of Plaintiff VILLAR had never been disciplined in this or any other employment.

8

28. At the time complained of herein, Plaintiff VILLAR was the only Hispanic female Lieutenant on the Captain's list.

29. Plaintiff VILLAR has made complaints of discrimination, both to her direct supervisor, as well as to the NYPD Internal Office of Equal Employment Opportunity ("OEEO") as well as a formal complaint to the Internal Affairs Bureau ("IAB") concerning fellow officers misconduct.

30. Plaintiff VILLAR's complaints included disrespectful treatment and severe and pervasive harassment which created a hostile work environment and the failure to promote her despite the fact that she scored at the top of the Captain's list.

31. Plaintiff VILLAR was retaliated against for having filed an OEEO complaint, the earliest being February 2007.

32. From the moment of her eligibility for promotion in June 2007, Plaintiff VILLAR has been treated differently than similarly situated non-Hispanic and male officers in the terms and conditions of her employment in that she has been subjected to a hostile work environment and continuous discrimination based upon her race and gender.

9

## PLAINTIFF'S WHISTLEBLOWING ACTIVITY

33. On or about August 29, 2007 while in the course of her employment with the NYPD, Plaintiff prepared and submitted a good faith complaint of misconduct against numerous fellow NYPD officers the contents of which alleged violations of the New York State Penal Law and internal NYPD Patrol Guide Rules and Regulations.

34. Plaintiff made official complaints starting on August 29, 2007 when she complained of official misconduct by officers assigned to the Queens South Narcotics Team in a letter forwarded to the Chief of Internal Affairs. Plaintiff's complaints continued throughout the years 2008 up to and including her most recent complaint forwarded on or about July 2009 to numerous City, State and Federal law enforcement officials, legislative representatives, and the judiciary. VILLAR in her Capacity as an NYPD LIEUTENANT and as a private citizen, engaged in these numerous expressions regarding matters of public concern involving mismanagement and misconduct of the Police Department, crimes committed by members of the Police Department, and public safety.

35. In retaliation for the foregoing First Amendment protected activities, i.e. the good faith submission of a complaint and her expressions on matters of public concern as a citizen and in her capacity as an NYPD Lieutenant, on

or about July 15, 2004 the Defendants took adverse employment action against VILLAR by preferring against her, disciplinary charges and specifications.

36. In preferring those charges, the Defendant subjected VILLAR to the potential penalty of dismissal from her employment by the City, in which position of employment VILLAR has a property interest.

37. On April 7, 2009 defendants dismissed VILLAR from her employment as an NYPD LIEUTENANT.

38. By reason of the foregoing, VILLAR has been subjected to financial damages and to emotional upset, anxiety, public humiliation and public shame.

HOSTILE WORK ENVIRONMENT

39. Upon information and belief, it is the custom and policy of the NYPD OEEO that all complaints be fully investigated.

40. Upon information and belief, on numerous occasions, Plaintiff VILLAR has made complaints of discrimination to the internal OEEO that were never investigated.

41. Upon information and belief, complaints made by non-Hispanic, male officers are investigated.

11

42. Since her arrival at "Building Maintenance Section", Plaintiff VILLAR has worked under a male, non-Hispanic Deputy Inspector, Defendant MICHAEL YANOSIK.

43. Defendant YANOSIK has made no secret of the fact that he does not like Plaintiff because she is a Hispanic female.

## ADVERSE EMPLOYMENT ACTIONS

44. Plaintiff was treated by Deputy Inspector Michael Yanosik, a non-Hispanic male, as being a Lieutenant with no supervisory status, in violation of Plaintiff's Civil Service Title Rights. Yanosik assigned Plaintiff to work with Police Officer Daisy Harrington to do purchasing in the Procurement Office, under the supervisor of Lieutenant Steven Rizzo.

45. After Lieutenant Rizzo retired, Plaintiff was assigned under the supervision of now retired Sergeant Michael Bellomo. While doing purchasing, Plaintiff was not privileged to perform any overtime and could not supervise any subordinates or discipline them for any observed wrongdoings.

46. Plaintiff would like to point out that BMS Integrity Officer Lieutenant Spencer Colgan, a non-Hispanic male, was on modified assignment from December 28, 2005 to September 27, 2006 and during this period he was never

12

ridiculed or denied anything.  He kept his supervisory status, was never deprived of any overtime plus during the time of his modification reported over $22,000.00 in overtime pay.

47.   Inspector Yanosik continued to remind Plaintiff that she had no supervisory status in front of Lieutenant Colgan and Sergeant Bellomo while discussing some irregularities Plaintiff brought tot his attention by a member of the service while on duty.  Inspector Yanosik did not allow Plaintiff to take corrective action regarding this matter, but assigned the investigation to Lieutenant Colgan who was also on modified assignment.

48.   Plaintiff then found pornographic magazines in the building, but the Inspector did not allow Plaintiff to report the matter herself, but gave the assignment to Lieutenant Colgan.  These magazines were vouchered at the 108th Precinct station house.

49.   In 2005 after Administrative Lieutenant Paul Peronich was transferred, Plaintiff designed a Command Organizational Chart, which was approved by Inspector Yanosik.  He then allowed Plaintiff some overtime which totaled 28.03 hours for the entire year while the other Lieutenants such as Operations Lieutenant Cooper, a non-

13

Hispanic male, reported over 650 hours and Lieutenant Colgan reported over 540 hours.

50.  On the Command Organizational Chart, the Inspector decided to keep the Administrative Lieutenant position open with no one assigned by rights that position should have been filled by Plaintiff.

51.  On Thursday, June 5, 2008, Inspector Yanosik came to Plaintiff's office and told Plaintiff, "Starting Monday, your tour is 0900 x 1700 hours.  Sergeant Christopher Brown is in charge of the professionals and SPAA Jackie Walsh is in chare of Payroll".  Plaintiff was stunned, but followed his order and he stated that he did not have time for Plaintiff, but was going to sit down with Plaintiff sometime in the future to discuss Plaintiff's responsibilities.

52.  On Monday, June 9, 2008, Deputy Inspector Yanosik requested that Plaintiff come to his office because he needed to speak with Plaintiff.  Upon arrival, Yanosik tells Plaintiff to re-arrange the furniture in his office, go through a pile of papers and file what was important and discard what was not.  Yanosik again states he has no time at the moment to sit with Plaintiff and discuss Plaintiff's

responsibilities. Plaintiff followed his order by first removing the pile of papers.[1]

53.   Plaintiff then requesting two maintenance workers from Maintenance supervisor David Valentin, who replied that he did not have anyone working in the building at the time.   Later on that day, Plaintiff was informed by Lieutenant Coope that Inspector Yanosik did not want anyone in the building after 1700 hours.   Unfortunately, this is after requesting two (2) maintenance workers to remain at BMS on overtime to move the Inspector's furniture as he requested.

54.   Feeling harassed and uncomfortable about the Inspector's behavior, his absence from the building after 0900 hours, the assignment of Plaintiff's unit to a Sergeant, the change of Plaintiff's tour to 0900 x 1700 hours when the Inspector is not in the building, the cutting of Plaintiff's overtime and nightshift differential and ordering Plaintiff to report to Lieutenant Coope, were some of the factors that forced Plaintiff to draft an EEO Complaint.

55.   On June 12, 2008 at 0845 hours, Plaintiff walked in the Command and observed a meeting being conducted by

---

[1] Plaintiff complied finding that the pile of papers were old documents sitting in defendant's office for a long period of time.  Plaintiff alleges this assignment was utilized as an excuse to keep Plaintiff occupied.

15

Deputy Inspector Yanosik with all supervisors (uniform and civilian), including ME II Ravi Chickmagalur from the Forensic Investigation Division's Police Lab who was notified by Inspector Yanosik on June 11, 2008 to attend this meeting.  However, Plaintiff was not requested by the Inspector to change her tour that day to attend this meeting.

56.  Now Plaintiff has been completely excluded from the frequent meetings Yanosik conducts in his office before 9:00 a.m. with the uniform and civilian supervisors, due to the tour change imposed by the Inspector, which took effect on June 9, 2008.

57.  In conclusion, these are the forms of discrimination, retaliation, harassment and the creation of a very hostile work environment for Plaintiff created by the New York City Police Department and specifically Deputy Inspector Michael Yanosik simply because Plaintiff is a Hispanic woman: denial of overtime; denial of nightshift differential; change in role and responsibility and stripping of supervisory responsibilities; and retaliation for documenting and reporting wrongdoing of members of the service to other units.

58.  Finally, Plaintiff's evaluation for January 2007 through January 2008 was deliberately changed from a 4.0 to

16

a 3.0 by Deputy Inspector Michael Yanosik to discredit Plaintiff's professional character and performance. Only because Plaintiff had kept a copy of her original 4.0 evaluation was Plaintiff able to maintain the 4.0.

UNFAIR AND UNGROUNDED DISCIPLINE

59. On or about July 2004, Plaintiff's brothers were both arrested on drug-related charges. Like any other concerned family member, during this family crisis, Plaintiff phoned the designated sites utilized by the entire public population (the Court and Central Booking) to get information concerning the case status of one of her brothers' arrest. Notwithstanding the fact and unbeknownst to Plaintiff, all her phone conversations were recorded. Plaintiff was suspended "for the good of the Department" on July 7, 2004 and thereafter placed on Modified Assignment until October 6, 2008 when Plaintiff was again prematurely suspended and continue on the same status, upon the recommendation of Assistant Deputy Commissioner of Trials, David S. Weisel.

60. Plaintiff was subjected to an extensive and in depth investigation regarding any illegal activity she may be involved in. The Internal Affairs Bureau investigation involved unlawful association, narcotics violations, money

17

laundering, tax evasion and perjury. The internal Affairs Bureau, apart from its own investigative resources, enlisted the aid of the United States Attorney's Office, the Internal Revenue Service, the New York State Department of Taxation and Finance, and the Queens County District Attorney's Office. Plaintiff was cleared of any wrongdoing by all the agencies involved without even being questioned by any entity. Moreover, the investigation by the Internal Affairs Bureau found that plaintiff did not engage in any illegal activity as it was reported by Lieutenant Ledda, indicating that after speaking to Officer Maldonado who reviewed all of the tapes, found that although Lieutenant Villar's voice was intercepted on the wiretaps there were no conversations relating to any illegal activity. The investigation could not find any connection between plaintiff and any illegal activity that either of plaintiff's brothers had engaged in. Plaintiff was also subjected to an unfair and ungrounded disciplinary charges and specifications and subjected to an internal disciplinary trial. In spite of knowing that there existed three identical audiotapes, which would clear Plaintiff of any wrongdoing, Plaintiff was prosecuted without the tape on October 6, 2008.

18

61. When the tape was located and application made before the Trial Judge to dismiss the charges and/or reopen this case the application was inexplicably denied.

62. At the conclusion of the trial, Plaintiff was found guilty of the charge and a penalty of dismissal was recommended in the Report and Recommendations dated October 6, 2008.

63. A Fogel letter dated October 24,2008 contesting the report and recommendations of Assistant Deputy Commissioner of Trials, David S. Weisel was submitted. Moreover, also submitted with that letter was an enhanced copy of tape 105/04 provided to the defense by the Queens County District Attorney's Office in the Alberto Villar criminal case of the conversations intercepted on July 6, 2004, which tape was not used at the departmental trial. The first recorded conversation on the tape, which last approximately 15 seconds, is the end of Plaintiff's conversation with her brother after speaking to the Court in which she states that the case involves recordings. This conversation according to the line sheets was not monitored and there is no notation in the line sheet as to the substance of the conversation. The conversations on the balance of the tape coincide with the conversations as reflected in the line sheet except for the alleged

19

conversation at 15:43 hours between Plaintiff and her brother. Although the line sheet listed the call at 15:43 hours from Plaintiff's cell phone number (917) 929-1630 with a notation "AV/sis Re: Brother's case", the tape provided does not contain the conversation. Plaintiff never denied having this subsequent conversation with her brother and had no explanation why it is not reflected on the tape.

64. In response to the Fogel letter, Assistant Deputy Commissioner of Trials, David S. Weisel conducted further proceedings in the matter. On November 18, 2008 Plaintiff appeared before Weisel wherein he indicated that he wanted to put the tape into evidence and directed both the Department and Plaintiff to prepare transcripts of the conversations contained in the tapes. Counsel for Plaintiff requested that the Department move to unseal the original tapes filed with the Court in the criminal case.

65. The matter was next on December 9, 2008. At that time Tape 105/2004 of July 6, 2004 was introduced into evidence as Court Exhibit 3 and the transcripts of the conversations on the tape submitted by Plaintiff were marked Court Exhibit 4. The Department declined to submit transcripts due to budgetary constraints.

66.   On or about January 22, 2009 a Supplemental Decision was submitted to Plaintiff wherein Assistant Deputy Commissioner of Trials, David S. Weisel adhered to his original decision.  Another Fogel letter dated February 5, 2009 was submitted in opposition to that decision. Annexed to that letter were copies of IAB reports that had previously been turned over by the Department Advocate which established that the Department knew at the time of the hearing that McCoy never used a "Department computer to impart any information to respondent from July 4, 2004 through July 7, 2004.  The Department Advocate had previously provided Plaintiff with IAB worksheets which establish that McCoy never used the Police Department computer to obtain the information which is the basis for the charges in this case as he testified to at the trial. Rather, it reaffirms the use of the public computer from which the public also gets the public information.  Based upon the results of IAB's investigation, the Department Advocate knew that the only persons who accessed any information on Department computers regarding the arrests of the Plaintiff's brothers were members of IAB.

67.   Police Commissioner Kelly's Final Order of Dismissal dated April 7, 2009, Disposition of Charges dated April 7, 2009, Report and Recommendations dated February 6,

21

2009 and Notice of Dismissal dated April 13, 2009 were served upon the Plaintiff.

68.   During the past four (4) years, and based on misinformation, the New York City Police Department has requested mail cover on Plaintiff's person through the U.S. Postal Inspection Service, Criminal Investigation Service Center and investigated Plaintiff and participated in having Plaintiff investigated by the U.S. Attorney's Office, the IRS, the New York State Department of Taxation and Finance, and the Queens County District Attorney's Office, all of whom declined to prosecute Plaintiff.  It is unclear whether these investigations were the result of intentional misconduct, but it is clear that Plaintiff was treated differently than non-Hispanic male officers in a complete disregard for Plaintiff's privacy and civil rights.

69.   Finally, during the last four (4) years, Plaintiff was subjected to a disciplinary "question and answer" known as a GO-15 Hearing after reporting a subordinate, Plaintiff's boss, for violation of overtime abuse and filing a complaint with Internal Affairs concerning serious misconduct including perjury and the illegal use of and conducting of wiretaps.

22

FAILURE TO PROMOTE

70. As previously stated, Plaintiff VILLAR ranked very high on the Captain's exam list which recently expired, maintaining the number 34.

71. Although becoming eligible for promotion on June 29, 2007, Plaintiff was never promoted despite the fact that everyone on the list had been promoted, including those that were many numbers below her.

72. The last set of promotions for which this list was used was on June 27, 2008.

73. In addition, at that time, Plaintiff was told that she was not being promoted due to the aforementioned charges that were filed against her.

AS AND FOR A FIRST CLAIM
PURSUANT TO 42 USC § 1981 AGAINST ALL DEFENDANTS

74. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1-73 with the same force and effect as if fully set forth herein.

75. Throughout the events cited herein, the individual Defendants, while acting under the color of law, subjected Plaintiff to the deprivation of rights, privileges and immunities secured by the Constitution and laws of the United States, and specifically the equal

23

protection and due process guarantees of the 14th Amendment and 1st Amendment free speech of the Constitution, civil rights as guaranteed under Article I, Section II, of the New York State Constitution.

76. Plaintiff has been deprived of her Constitutional rights to be free of discrimination based upon gender and race and retaliation, and has been damaged in her employment and has suffered emotional distress and conscious pain and suffering as a result of these actions.

77. The actions of Defendants, in depriving Plaintiff of her constitutional and civil rights, as herein before stated, was willful and malicious acts.

78. As a result of the aforesaid wrongful, reckless and intentional acts of Defendants, Plaintiff has been damaged in the amount of $5,000,000.00.

79. Based on the foregoing, Plaintiff is entitled to punitive and exemplary damages in the sum of $5,000,000.00.

AS AND FOR A SECOND CLAIM
PURSUANT TO 42 USC § 1983 AGAINST ALL INDIVIDUAL DEFENDANTS

80. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1-79 with the same force and effect as if fully set forth herein.

24

81. The individual Defendants have embarked on a course of conduct that deprived Plaintiff of her rights under the United States Constitution, federal and state law.

82. The facts and circumstances cited above with reference to the Constitution and other civil rights violations suffered by Plaintiff are examples of Defendants' violations of Plaintiff's civil rights.

83. The actions of Defendants, acting under color of state and local law, custom and usage, have deprived Plaintiff of her rights, privileges and immunities under the laws and Constitution of the United States, and in particular, of her rights to due process and equal protection under the 14th Amendment and 1st Amendment Free Speech.

84. By these actions, Defendants have jointly and separately deprived Plaintiff of her rights under the 1st and 14th Amendments to the United States Constitution, in violation of 42 USC § 1983.

85. As a consequence of Defendants' unlawful actions, Plaintiff demands damages in the amount of $5,000,000.00.

AS AND FOR A THIRD CLAIM
FOR VIOLATIONS OF THE FIRST AMENDMENT PURSUANT TO THE
UNITED STATES CONSTITUTION 42 USC § 1983

86. Plaintiff repeats, realleges, and reiterates each and every allegation set forth in paragraphs 1-85 with the same force and effect as if fully set forth herein.

87. By reason of the foregoing, Defendants violated Plaintiff's rights as guaranteed her by reason of the First Amendment to the United States Constitution 42 U.S.C. § 1983

AS AND FOR A FOURTH CLAIM AGAINST DEFENDANTS FOR FIRST
AMENDMENT RETALIATION

88. Plaintiff repeats, realleges, and reiterates each and every allegation set forth in paragraphs 1-87 with the same force and effect as if fully set forth herein.

89. Plaintiff has been unlawfully subjected to a hostile work environment and harassment in retaliation for exercising her 1st Amendment rights to free speech.

90. The aforementioned conduct on the part of Defendants was without cause or justification and violated Plaintiff's rights, civil rights, privileges and immunities as guaranteed by the 1st Amendment of the United States Constitution as well as the Constitution of the State of New York and the New York City Administrative Code and Human Rights Law.

26

91. The actions of Defendants in depriving Plaintiff of her constitutional and civil rights were willful and malicious acts.

92. As a direct and proximate consequence of Defendants' unlawful, discriminatory and harassing conduct, Plaintiff has suffered losses of benefits and privileges of her employment with the New York City Police Department, been damaged professionally and economically, as well as suffered physical and emotional pain and suffering.

93. Based on the foregoing, Plaintiff is entitled to compensatory damages in the amount of $5,000,000.00, and punitive and exemplary damages in the amount of $5,000,000.00.

AS AND FOR A FIFTH CLAIM PURSUANT TO 42 USC § 1985

94. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1-93 with the same force and effect as if fully set forth herein.

95. Defendants have conspired with and amongst each other to deprive Plaintiff of her rights under the United States Constitution, federal, state and city laws.

96. The named Defendants have conspired to violate Plaintiff's civil rights pursuant to 42 USC § 1985 when they agreed together to implement, direct and/or participate in a program to retaliate, harass and create a

27

hostile work environment against Plaintiff solely because of her gender and race and in opposition to discrimination and whistle blowing.

97. Such policy and practice is an intentional and concerted effort by Defendants to disparage Plaintiff.

98. By reason of the aforementioned facts and conspiracy, each of the individual Defendants has violated 42 USC § 1985.

99. The actions and omissions of Defendants, in depriving Plaintiff of her constitutional and civil rights, by their participation in the discriminatory and harassing and retaliatory conduct, as herein stated, were willful and malicious acts.

100. Because of the foregoing, Plaintiff has been damaged in the amount of $5,000,000.00, and punitive and exemplary damages in the sum of $5,000,000.00.

## AS AND FOR A SIXTH CLAIM IN VIOLATION OF TITLE VII OF CIVIL RIGHTS ACT OF 1964 AS AMENDED

101. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1-100 with the same force and effect as if fully set forth herein.

102. Based upon the aforementioned facts, Defendants discriminated against Plaintiff as a result of her gender

28

and race and in retaliation for exercising her First Amendment rights.

103. Defendants intentionally and willfully discriminated against and harassed Plaintiff and permitted Plaintiff to be discriminated against and harassed in her employment on account of her gender and race and in retaliation for opposition to discrimination, thereby violating §704(A) OF Title VII of the Civil Rights Act of 1964 as amended and 42 USC §2000e-3(a).

104. No action was taken by Defendants or its agents to stop the harassment of Plaintiff, thereby contributing to a hostile working environment.

105. As a result of the Defendants' conduct, Plaintiff has suffered economic loss, pain, humiliation, embarrassment, and extreme emotional distress and continues to suffer to this day, and further as a result of Defendants' conduct, Plaintiff has suffered both professionally and personally.

106. As a result of the foregoing, Plaintiff has been damaged in the amount of $5,000,000.00. Additionally, Plaintiff seeks punitive and exemplary damages in the sum of $5,000,000.00 against the individual Defendants.

29

## AS AND FOR A SEVENTH CLAIM PURSUANT TO NEW YORK STATE EXECUTIVE LAW § 296

107. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1-106 with the same force and effect as if fully set forth herein.

108. Based on the foregoing, Defendants intentionally and willfully discriminated against Plaintiff in her employment on account of gender and race and in opposition to discriminatory practices in violation of New York State Executive Law § 296. Plaintiff has continuously been victimized by Defendants for their opposition to discrimination and a hostile working environment created by Defendants.

109. Even though Defendants were aware of Plaintiff's complaints and the existence of a hostile work environment, no actions were taken by Defendants in an effort to correct the discriminatory conduct.

110. Such conduct on the part of Defendants and all others, without cause or justification, violated the Plaintiff's civil rights guaranteed under the New York State Constitution and New York State Executive Law § 296.

111. As a result of Defendants' actions and all deprivations of Plaintiff's rights as guaranteed under New York State Executive Law § 296, Plaintiff has suffered

economic loss, pain, humiliation and extreme emotional distress.

112. As a result of the foregoing wrongful, careless and intentional acts of Defendants, Plaintiff has been damaged in the amount of $5,000,000.00. Additionally, Plaintiff seeks punitive and exemplary damages in the amount of $5,000,000.00.

## AS AND FOR A EIGHTH CLAIM PURSUANT TO NEW YORK CITY ADMINISTRATIVE CODE SECTION 8-107(1) et. seq.

113. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1-112 with the same force and effect as is fully set forth herein.

114. Defendants discriminatory conduct based on Plaintiff's race and gender as well as in retaliation for her whistle blowing and complaints of discriminatory conduct by other members of the New York City Police Department and in retaliation for her opposition to discrimination, constitutes discrimination in violation of the New York City Administrative Code § 8-107(1) et.seq. and the New York City Human Rights Law.

115. The aforementioned occurrences were caused by the wrongful, careless, reckless and intentional acts of Defendants.

31

116. Because of the foregoing, Plaintiff has been damaged in the amount of $5,000,000.00. Additionally Plaintiff seeks punitive and exemplary damages in the amount of $5,000,000.00.

## JURY TRIAL

117. Plaintiff requests a jury trial on all questions of fact.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this honorable Court grant the following relief:

1. Declare that the aforementioned actions of Defendants were unconstitutional and in violation of the United States Constitution, the New York State Constitution and New York City Human Rights Law and Administrative Code along with all applicable statutes;

2. Declare that the aforementioned discriminatory actions of Defendants were in violation of New York State Executive Law § 296, 42 U.S.C. § 1981, 42 U.S.C. § 1983, 42 U.S.C. § 1985, and Title VII of the Civil Rights Act of 1964, as amended;

3. Enjoin the Defendants and their successors, agents, servants, employees and those in active concert or participation with them from subjecting their employees to

32

retaliatory and harassing conduct based on their race, and gender and her engagement in the protected activity of formally complaining of said discrimination;

4. As and for Plaintiff's First Claim, grant Plaintiff the sum of $5,000,000.00, along with punitive and exemplary damages in the amount of $5,000,000.00;

5. As and for Plaintiff's Second Claim, grant Plaintiff the sum of $5,000,000.00 along with punitive and exemplary damages in the amount of $5,000,000.00;

6. As and for Plaintiff's Third Claim, grant Plaintiff the sum of $5,000,000.00 along with punitive and exemplary damages in the amount of $5,000,000.00;

7. As and for Plaintiff's Fourth Claim, grant Plaintiff the sum of $5,000,000.00 along with punitive and exemplary damages in the amount of $5,000,000.00;

8. As and for Plaintiff's Fifth Claim, grant Plaintiff the sum of $5,000,000.00 along with punitive and exemplary damages in the amount of $5,000,000.00;

9. As and for Plaintiff's Sixth Claim, grant Plaintiff the sum of $5,000,000.00 along with punitive and exemplary damages in the amount of $5,000,000.00;

10. As and for Plaintiff's Seventh Claim, grant Plaintiff the sum of $5,000,000.00 along with punitive and exemplary damages in the amount of $5,000,000.00;

33

11. As and for Plaintiff's Eighth Claim, grant Plaintiff the sum of $5,000,000.00 along with punitive and exemplary damages in the amount of $5,000,000.00

12. Grant Plaintiff all costs for this action, including reasonable attorney's fees; and

13. Grant Plaintiff such other and further relief as this Court deems just.

Dated:    Lake Success, New York
          August 20, 2009

                              Yours etc,
                              Cronin & Byczek, LLP


                              _____
                              LINDA M. CRONIN (LC0766)
                              Attorneys for Plaintiff
                              1983 Marcus Ave, Suite C-120
                              Lake Success, New York 11042
                              (516) 358-1700

34

**Exhibit "A"**



**U.S. Department of Justice**

Civil Rights Division
NOTICE OF RIGHT TO SUE
WITHIN 90 DAYS

CERTIFIED MAIL
5070 3905

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson , EMP, PHB, Room 4239*
*Washington, DC 20530*

May 22, 2009

Ms. Maria Villar
c/o Linda M. Cronin, Esquire
Law Offices of Cronin & Byczek
Attorneys & Counselors at Law
1983 Marcus Ave., Ste. C-120
Lake Success, NY   11042

Re:  EEOC Charge Against New York City Police Department
     No. 520200900817

Dear Ms. Villar:

Because you filed the above charge with the Equal Employment
Opportunity Commission, and the Commission has determined that it will not
be able to investigate and conciliate that charge within 180 days of the
date the Commission assumed jurisdiction over the charge and the
Department has determined that it will not file any lawsuit(s) based
thereon within that time, and because you through your attorney have
specifically requested this Notice, you are hereby notified that you have
the right to institute a civil action under Title VII of the Civil Rights
Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named
respondent.

If you choose to commence a civil action, such suit must be filed in
the appropriate Court within 90 days of your receipt of this Notice.

The investigative file pertaining to your case is located in the EEOC
New York District Office, New York, NY.

This Notice should not be taken to mean that the Department of
Justice has made a judgment as to whether or not your case is meritorious.

Sincerely,

Loretta King
Acting Assistant Attorney General
Civil Rights Division

by  *Karen J. Ferguson*

Karen L. Ferguson
Supervisory Civil Rights Analyst
Employment Litigation Section

cc: New York District Office, EEOC
    New York City Police Department

*Index No.*                              *Year* 20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARIA VILLAR,

                                                    Plaintiff,

                - against -

CITY OF NEW YORK et al.

                                                    Defendants.

SUMMONS AND COMPLAINT

Cronin & Byczek, LLP
1983 Marcus Avenue
Suite C-120
Lake Success, New York  11042

(516) 358-1700

*To:*

*Attorney(s) for*

*Service of a copy of the within*                              *is hereby admitted.*

*Dated:*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*Attorney(s) for*

*PLEASE TAKE NOTICE*

☐    *that the within is a (certified) true copy of a*
NOTICE OF    *entered in the office of the clerk of the within named Court on*                              20
ENTRY

☐    *that an Order of which the within is a true copy will be presented for settlement to the Hon.*
NOTICE OF    *one of the judges of the within named Court,*
SETTLEMENT    *at*
    *on*                              20    *, at*                              *M.*

*Dated:*

Cronin & Byczek, LLP
1983 Marcus Avenue
Suite C-120
Lake Success, New York  11042

*To:*