UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X
MARIA VILLAR,

                Plaintiff,

                                    09-CV-7400 (DAB)

    v.                             <u>OPINION</u>

THE CITY OF NEW YORK, et al.,

                Defendants.
---------------------------------------X
DEBORAH A. BATTS, United States District Judge.

      Plaintiff Maria Villar ("Plaintiff" or "Villar"), a
Hispanic female, brings this employment discrimination action
against the City of New York, Deputy Inspector Michael Yanosik,
and Lieutenant John P. McGovern (collectively, "Defendants")
pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C.
§ 2000e <u>et seq.</u>, the New York State Human Rights Law ("NYSHRL"),
the New York City Human Rights Law ("NYCHRL"), 42 U.S.C. § 1981,
and 42 U.S.C. § 1983.[1] Plaintiff maintains that Defendants
discriminated against her on the basis of her race and sex by
subjecting her to improper discipline, terminating her, failing
to promote her, denying her overtime, and subjecting her to a
hostile work environment, and retaliated against her for her

---

[1] Plaintiff has voluntarily withdrawn her claims against all
other Defendants listed in the original caption. (Pl.'s Mem. L.
Opp'n Defs.' Mot. Summ. J. ("Pl.'s Opp'n") 23; Pl.'s Ltr. to
Ct., Aug. 21, 2014.) She has also voluntarily withdrawn her
"whistleblower" and First Amendment retaliation claims, as well
as her claims under 42 U.S.C. § 1985. (Pl.'s Opp'n 23.)

complaints of discrimination. Defendants now move pursuant to Fed. R. Civ. P. 56 for Summary Judgment on each of Plaintiff's claims.

For the reasons set forth herein, Defendants' Motion for Summary Judgment is granted in part and denied in part.


## I. FACTUAL BACKGROUND

A. The Parties

Defendant the City of New York (the "City") is a municipal corporation that operates the New York City Police Department ("NYPD"). Defendant Deputy Inspector Michael Yanosik ("Yanosik") was Commanding Officer of NYPD's Building Maintenance Section ("BMS") from at least November 2004 to August 2006 and from May 2008 to at least October 2008. (Defs.' 56.1 Stmt. ¶¶ 49, 54; Pl.'s Resp. Defs.' 56.1 Stmt. ¶ 49; Pl.'s 56.1 Stmt. ¶ 74.) Defendant Lieutenant John P. McGovern ("McGovern") was a lieutenant in NYPD's Internal Affairs Bureau ("IAB") on July 9, 2004. (Pl.'s 56.1 Stmt. ¶ 13; Avallone Decl. Ex. RRR.) Plaintiff Maria Villar was appointed a Police Officer in NYPD on January 30, 1995. (Defs.' 56.1 Stmt. ¶ 4.) At all times relevant to this action prior to her termination, Plaintiff was employed by the City as a Lieutenant in the NYPD. (See Defs.' 56.1 Stmt. ¶ 1.)

B. Arrests of Plaintiff's Brothers and Issuance of Charge

On or about July 5, 2004, Plaintiff's brother, Sergio De Los Santos ("Sergio"), was arrested on drug-related charges. (Defs.' 56.1 Stmt. ¶ 16.) Late that night, Sergio called Plaintiff and informed her that he had been arrested but expected to be released the following morning. (Defs.' 56.1 Stmt. ¶ 17; Pl.'s Resp. Defs.' 56.1 Stmt. ¶ 17; Villar Dep. 39:5-40:1.) On July 6, 2004, Plaintiff called the Queens Central Booking Court Unit and asked if Sergio had been released. (Defs.' 56.1 Stmt. ¶ 18; Villar Dep. 40:16-17.) According to Plaintiff, the Court Clerk at Queens Central Booking told Plaintiff that Sergio was not going to be released because there was a big investigation involving search warrants and wiretaps. (Defs.' 56.1 Stmt. ¶ 18; Pl.'s Resp. Defs.' 56.1 Stmt. ¶ 18; Villar Dep. 41:7-9.) That same day, Plaintiff called the Expedited Affidavit Program at the Queens Central Booking Intake Unit and asked Police Officer Kelvin McKoy for the status of Sergio's case. (Defs.' 56.1 Stmt. ¶ 19; Pl.'s Resp. Defs.' 56.1 Stmt. ¶ 19; Villar Dep. 44:20-25.) Plaintiff was friends with McKoy and had worked with him for two years at Queens Central Booking. (Pl.'s Resp. Defs.' 56.1 Stmt. ¶ 19.) McKoy told Plaintiff that "the folder wasn't ready yet," which meant that Sergio was not going to be arraigned yet, and that his case

involved a wiretap. (Defs.' 56.1 Stmt. ¶ 20; Villar Dep. 71:19-72:8.)

At some point on July 6, 2004, Plaintiff called another of her brothers, Alberto Villar ("Alberto") and told him that Sergio had not yet been released and that there was a big investigation involving tape recordings of Sergio and search warrants. (Defs.' 56.1 Stmt. ¶ 21; Villar Dep. 48:2-24.) Alberto was already aware that Sergio had been arrested. (Defs.' 56.1 Stmt. ¶ 21.) It is not clear whether this conversation occurred before or after Plaintiff's conversation with McKoy. (Compare Villar Dep. 44:22-48:24, with Schowengerdt Decl. Ex. G, at DOA0047-DOA0048.) At some point after her conversation with McKoy, Plaintiff again called Alberto to tell him that Sergio still had not been arraigned. (Defs.' 56.1 Stmt. ¶ 23.)

Unbeknownst to Plaintiff and Alberto, the NYPD's Narcotics Division was investigating Alberto and Sergio, had placed a wiretap on their telephones, and recorded the July 6, 2004 conversations between Alberto and Plaintiff. (Defs.' 56.1 Stmt. ¶¶ 24-25.) According to Detective Joseph Fusco, who was involved in the investigation of Alberto and Sergio, after his investigation team learned that Plaintiff had told Alberto that wiretaps were involved in the investigation, they decided to arrest Alberto and to dismantle the case prematurely. (Schowengerdt Decl. Ex. G, at DOA006-007.) At the time Alberto

4

was arrested, he was in possession of an NYPD duffel bag containing two kilograms of heroin. (Defs.' 56.1 Stmt. ¶ 31.) He subsequently pled guilty to criminal felony charges, and Sergio pled guilty to the sale of narcotics. (Defs.' 56.1 Stmt. ¶¶ 38-39.)

The Queens Narcotics Division subsequently notified the NYPD Internal Affairs Bureau ("IAB") of Plaintiff's call to Alberto. (Defs.' 56.1 Stmt. ¶ 40; Pl.'s Resp. Defs.' 56.1 Stmt. ¶ 40.) On July 7, 2004, three supervisors came to Plaintiff's house, informed her that she was being suspended, and removed her firearms and shield. (Defs.' 56.1 Stmt. ¶ 42.) When Plaintiff asked one of her supervisors, Captain Timothy Kerr, why she was being suspended, he told her, "as per Chief Campisi, you are suspended for the good order of the department." (Villar Dep. 203:1-4.) On July 15, 2004, a Charge was issued against Plaintiff by NYPD, stating that Plaintiff "did wrongfully and without authorization divulge or discuss official Department business with a person, identity known to this Department." (Schowengerdt Decl. Ex. E, at DOA0150.) Plaintiff was served with the Charge when she returned from her suspension on August 9, 2004. (Defs.' 56.1 Stmt. ¶ 45; Schowengerdt Decl. Ex. E, at DOA0151.) At this time, she was assigned to the Safety Division Borough and placed on modified duty; modified duty involves assignment only to non-enforcement duties pending a

5

determination of fitness to perform police duties. (Defs.' 56.1 Stmt. ¶¶ 45-46, 48.)


   C. Assignment to NYPD Building Maintenance Section

      In November 2004, Plaintiff was transferred to BMS, where she remained on modified duty. (Defs.' 56.1 Stmt. ¶ 47; Villar Dep. 212:19-22, 223:17-18.) Plaintiff's supervisor at BMS, Yanosik, told Plaintiff that pursuant to orders he had received, she did not have supervisory status; Yanosik subsequently placed Plaintiff under the supervision of a Sergeant and assigned her to work with a Police Officer who was on full duty. (Defs.' 56.1 Stmt. ¶¶ 49-50; Pl.'s Resp. Defs.' 56.1 Stmt. ¶¶ 49-50; Pl.'s 56.1 Stmt. ¶ 36; Meyer Dep. 31:22-24; Villar Dep. 213:14-15.) Plaintiff alleges and submits evidence that Yanosik permitted Spencer Colgan, a Caucasian male lieutenant who was on modified duty from December 28, 2005 to September 27, 2006, to maintain his supervisory responsibilities while on modified duty; Plaintiff also alleges that Yanosik gave some of her responsibilities to Colgan. (Avallone Decl. Ex. FF; Pl.'s Resp. Defs.' 56.1 Stmt. ¶¶ 58-59; Meyer Dep. 43:12-16, 65:10-24.) Captain David Meyer, who also worked at BMS at this time, testified that he believed Yanosik did not give Plaintiff supervisory responsibilities because she "wasn't involved or wasn't one of the guys." (Meyer Dep. 53:8-9.) According to

Plaintiff and Meyer, Yanosik also denied her overtime during this period but permitted Caucasian male lieutenants to work a significant amount of overtime. (Pl.'s 56.1 Stmt. ¶¶ 49-50; Meyer Dep. 39:25-40:22.)

In August 2006, Yanosik took an educational leave of absence and was replaced by Meyer. (Defs.' 56.1 Stmt. ¶ 51.) Meyer permitted Plaintiff to take on supervisory duties, and Plaintiff does not allege that she was treated poorly under Meyer's command. (Defs.' 56.1 Stmt. ¶ 52; Pl.'s Resp. Defs.' 56.1 Stmt. ¶ 52; Villar Dep. 215:4-9.)

In May 2008, Meyer transferred out of BMS and Yanosik returned as BMS's Commanding Officer and Plaintiff's supervisor. (Defs.' 56.1 Stmt. ¶ 54; Meyer Dep. 54:19-21.) In June 2008, Yanosik asked Plaintiff to file some papers in his office and to move a desk and conference table in his office five feet. (Defs.' 56.1 Stmt. ¶ 55.) On the morning of June 20, 2008, Yanosik allegedly yelled at Plaintiff and threatened to suspend her if she did not provide him with a particular form she had created on her own time; as a result, Plaintiff had to go home to retrieve the form. (Villar Decl. ¶ 16.)

Plaintiff also alleges that after Yanosik returned, he significantly reduced her overtime. (Pl.'s 56.1 Stmt. ¶ 60.) According to Plaintiff's pay stubs, the only overtime she received between May 2008 and October 2008 was approximately

twenty-nine hours earned between April 27, 2008 and May 10, 2008. (Avallone Decl. Ex. FFF.) Plaintiff does not provide evidence of what other BMS lieutenants earned in overtime between May 2008 and October 2008. (Pl.'s 56.1 Stmt. ¶ 60.) The Parties agree that Plaintiff was the third highest overtime earner among the five lieutenants assigned to BMS from January 2007 through July 2008, but, as Plaintiff notes, Yanosik only became her supervisor in May 2008. (Defs.' 56.1 Stmt. ¶ 83; Pl.'s Resp. Defs.' 56.1 Stmt. ¶ 83; see Schowengerdt Decl. Ex. M.)

D. Plaintiff's Department Trial and Termination

Between mid-2004 and July 2008, Plaintiff was the subject of an investigation by NYPD's Internal Affairs Bureau. (Johnson Dep. 11:4-14, 20:5-8, 41:3-7.) After Plaintiff was charged with wrongfully divulging official Department business with a person known to the Department in July 2004, IAB focused its investigation on substantiating that Charge and on determining whether any additional Charges and Specifications should be added. (Johnson Dep. 19:22-20:22, 40:21-24; Schowengerdt Decl. Ex. E, at DOA0150.) In particular, IAB investigators sought to determine whether Plaintiff was involved in money laundering related to her brothers' crimes. (Johnson Dep. 20:9-22, 26:14-23.) In July 2004, McGovern, a lieutenant in the IAB, informed

the U.S. Postal Investigation Service that its investigation had "disclosed that [Plaintiff] is engaged in money laundering activity." (Avallone Decl. Ex. RRR.) In July 2007, IAB investigators met with Assistant U.S. Attorney Elaine Banar regarding their money laundering investigation, and Banar informed them that the evidence was insufficient for her office to charge Plaintiff with money laundering. (Johnson Dep. 24:7-25:4.) Kesha Johnson, the lead IAB investigator at that time, also did not think that Plaintiff should be prosecuted for money laundering. (Johnson Dep. 38:14-18.) Ultimately, IAB decided they "couldn't prove anything was wrong with [Plaintiff's] financial reports" and did not issue a money laundering Charge against Plaintiff. (Johnson Dep. 33:2-6.) IAB also decided not to issue any additional Charges against Plaintiff, and IAB found that no additional violations or allegations against Plaintiff were substantiated. (Johnson Dep. 40:21-41:21, 43:9-17.)[2]

On July 14 and July 16, 2008, the NYPD held an administrative trial regarding the July 15, 2004 Charge. (Defs.' 56.1 Stmt. ¶ 63; Pl.'s Resp. Defs.' 56.1 Stmt. ¶ 63;

---

[2] Even so, Defendants, in their 56.1 Statement, attempt to connect Plaintiff to her brothers' narcotics activities by citing to Plaintiff's real estate holdings, her payments towards Alberto's legal fees and bail, and the fact that she had given Alberto a Patrolmen's Benevolent Association card. (Defs.' 56.1 Stmt. ¶¶ 8-15, 31-37; but see Pl.'s Resp. Defs.' 56.1 Stmt. ¶¶ 8-15, 31-37; Johnson Dep. 39:3-6.)

Schowengerdt Decl. Ex. G, at DOA0004.) The trial was adjudicated by Assistant Deputy Commissioner of Trials David Weisel, and Plaintiff was represented by counsel. (Defs.' 56.1 Stmt. ¶¶ 63-64.) Before concluding the trial on July 16, 2008, Commissioner Weisel informed Plaintiff that should he find her guilty, he would review her employment record in connection with recommending a penalty to the Police Commissioner; he also informed Plaintiff that she had a right to review her employment records before he looked at them and to submit additional materials to the Court before Commissioner Weisel made his penalty determination. (Avallone Decl. Ex. K.)

Accordingly, on July 17, 2008, Plaintiff requested her Central Personnel Index ("CPI"), or disciplinary record, from the NYPD. (Avallone Decl. Ex. I.) The NYPD gave Plaintiff a CPI dated July 29, 2008 which stated, at the bottom, "Number of Event Records: 30." (Avallone Decl. ¶ 11 & Ex. I.) However, Plaintiff alleges that Commissioner Weisel received a different version of her CPI, produced during discovery, which was also dated July 29, 2008. (Avallone Decl. ¶ 12 & Ex. I, Ex. J, at IAB 0473.) This second CPI, which stated "Number of Event Records: 31" at the bottom, included the following information not on the CPI given to Plaintiff:

```
INTERNAL INVESTIGATION   ALLEGATION: ASSOCIATION NARCOTICS
                                     (FAMILY MEMBER)
DATE: 4/20/2004          DISPOSITION: SUBSTANTIATED
```

```
. . .                    ALLEGATION: COMPUTER MISUSE
. . .                    DISPOSITION: UNSUBSTANTIATED
                         ALLEGATION: SELL/DISCLOSE CONF. INFO
                         DISPOSITION: SUBSTANTIATED
. . . .
         CASE CLOSED**IAB GRP#53** 5/28/08
         **** CHARGES & SPEC ISSUED (ME)
```

(Avallone Decl. Ex. J, at IAB 0473; compare with Avallone Decl.

Ex. I, at 4.) Plaintiff alleges that this second CPI was

falsified and that, had she been provided with a copy of it at

the time she received the first CPI, she would have had the

opportunity to inform Commissioner Weisel that the information

in the second CPI was false. (Villar Decl. ¶ 17.)

On October 6, 2008, Commissioner Weisel issued a Report and

Recommendation recommending that Plaintiff be found guilty of

the Charge and terminated. (Defs.' 56.1 Stmt. ¶ 67.) Plaintiff's

counsel submitted a Fogel letter to the Police Commissioner on

October 24, 2008, objecting to Commissioner Weisel's Report and

Recommendation and submitting new evidence. (Defs.' 56.1 Stmt. ¶

68; Pl.'s Resp. Defs.' 56.1 Stmt. ¶ 68.) Commissioner Weisel

permitted the reopening of the trial and on December 9, 2008

admitted into evidence a tape that Plaintiff's counsel had

submitted with its Fogel letter. (Avallone Decl. Ex. JJ;

Avallone Decl. Ex. LL, at 1-2.) On January 22, 2009,

Commissioner Weisel issued a Supplemental Decision explaining

that the new evidence would not have changed the outcome of the

trial. (Defs.' 56.1 Stmt. ¶ 68; Avallone Decl. Ex. LL, at 1;

Schowengerdt Decl. Ex. I.) Plaintiff's counsel submitted a
second <u>Fogel</u> letter in opposition to the Supplemental Decision
on February 5, 2009. (Avallone Decl. Ex. LL.) On February 6,
2009, Commissioner Weisel issued his Final Decision, which found
Plaintiff guilty and recommended Plaintiff's termination.
(Schowengerdt Decl. Ex. G, at DOA0003-04, DOA0054.) The
Decision's last paragraph stated,

> Essentially, this is a case in which, whatever her level
> of knowledge or intention, a Lieutenant of this
> Department called a drug trafficker (Alberto, whose
> criminal case resulted in 'a most favorable plea'
> according to the Respondent's counsel) with information
> about a court-authorized wiretap in a related drug case.
> She then discussed with that trafficker the implications
> of a long-term police investigation involving a wiretap.
> Under these circumstances, the Court can recommend no
> other penalty but termination.

(Schowengerdt Decl. Ex. G, at DOA0054.) Police Commissioner
Raymond W. Kelly approved the disposition and recommended
penalty on April 7, 2009, and Plaintiff was dismissed from the
NYPD effective April 13, 2009. (Defs.' 56.1 Stmt. ¶ 75;
Schowengerdt Decl. Ex. B.)

　　Plaintiff argues that she received a significantly harsher
punishment than similarly situated male comparators. (Villar
Decl. ¶¶ 9, 11.) First, she notes that NYPD issued McKoy, who is
male,[3] a Letter of Instruction for logging onto the department

---

[3] Plaintiff states in her Response to Defendants' 56.1 Statement
that McKoy is non-Hispanic. (Pl.'s Resp. Defs.' 56.1 Stmt. ¶ 6.)
However, Plaintiff cites to nothing in the record, nor is the

computer system, obtaining information regarding Sergio, and then relaying that information to Plaintiff on July 6, 2004; however, NYPD did not formally issue a Charge against McKoy. (Pl.'s Resp. Defs.' 56.1 Stmt. ¶ 6; Avallone Decl. Ex. G.) She also points to five male NYPD members who were found guilty of impeding, preventing, or interfering with an official department investigation but received lesser penalties. (Villar Decl. ¶ 9(B)-(F).)

Plaintiff further notes that five male NYPD members found guilty of some variation of wrongfully divulging or disclosing official Department business received lesser penalties than she did. (Avallone Decl. Ex. UUU, at 1; Avallone Decl. Ex. VVV, at 1-COM 0166; Villar Decl. ¶¶ 9(A), 11.) Of these five members, four were found guilty of divulging Department business to another NYPD member. (Avallone Decl. Ex. UUU, at 1; Avallone Decl. Ex. VVV, at COM 0012, COM 0022, COM 0166.) One of the five

---

Court aware of anything in the record, identifying McKoy's race or ethnicity. (See id. (citing Avallone Decl. Ex. G and Avallone Decl. Ex. H 36:14-18).) Accordingly, Plaintiff has failed to establish or raise an issue of material fact as to McKoy's race or ethnicity. See Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."); Local R. S.D.N.Y. 56.1(d) ("Each statement by the . . . opponent pursuant to Rule 56.1 . . . (b), including each statement controverting any statement of material fact, must be followed by citation to evidence.").

male NYPD members was found guilty in August 2010 for, "having
been made aware of criminal allegation made against a civilian
acquaintance, contacted said acquaintance and wrongfully
divulged or discussed official Department business without
permission or authority to do so." (Avallone Decl. Ex. VVV, at
COM 0063.) In particular, Assistant Deputy Commissioner of
Trials John Grappone found that after the male comparator
learned that his civilian friend was being investigated for rape
allegations, he called his civilian friend, questioned him about
whether he had raped someone, and, in doing so, "let[] [his
friend] know that the Department was investigating allegations
of a rape that [the friend] possibly committed." (Schowengerdt
Reply Decl. Ex. A, at COM 0127-28.) In determining the
appropriate penalty, Commissioner Grappone noted, "Divulging
Department information, by a member of service, relating to
criminal allegations to a possible person suspected of
committing a crime is a very serious act of misconduct. The
consequences of this act could lead to that person fleeing and
possibly never be [sic] caught to face his crime." (Id. at COM
0136.) He recommended that the comparator be penalized by
forfeiting twenty-five vacation days. (Id.) Commissioner Kelly
disapproved the penalty because "[t]he overall nature of the
misconduct committed by the Respondent, who is a ranking
officer, warrants a more significant penalty"; accordingly, he

increased the penalty to a forfeiture of thirty-five vacation days. (Avallone Decl. Ex. VVV, at COM 0060.)

E. Alleged Denial of Promotions

Plaintiff was promoted to Sergeant in May 2000 and was promoted to Lieutenant in 2003. (Defs.' 56.1 Stmt. ¶¶ 76-77.) In June 2007, Plaintiff became eligible for promotion to Captain. (Id. ¶ 78.) The Captain's exam list on which Plaintiff's name appeared as eligible for promotion expired on June 27, 2008. (Id.) NYPD's written policy stated that NYPD members not on full duty status would not be considered for promotion, and Plaintiff admits that she was not eligible for promotion because of her modified duty status. (Schowengerdt Decl. Ex. P; see also Pl.'s Resp. Defs.' 56.1 Stmt. ¶¶ 79-80.) Plaintiff, however, argues that NYPD failed to bring Plaintiff to trial on the July 2004 Charge in a speedy manner, and that this failure resulted in her remaining on modified duty and not being promoted. (Pl.'s Resp. Defs.' 56.1 Stmt. ¶ 79.)

F. Plaintiff's Complaints of Discrimination and Defendants'
   Allegedly Retaliatory Response

On June 20, 2008, Plaintiff filed a Complaint with the NYPD Office of Equal Employment Opportunity ("OEEO"), alleging that Yanosik had discriminated against her on the basis of her race

15

and sex and had retaliated against her because she had reported
wrongdoing to other units. (Defs.' 56.1 Stmt. ¶ 81; Schowengerdt
Decl. Ex. J, at EEO042.) In addition, although in February 2008
Meyer had given Plaintiff an evaluation score of "4" for the
period of January 2007 to January 2008, in July 2008, Yanosik
changed Plaintiff's evaluation score for the January 2007 to
January 2008 period to a "3." (Pl.'s 56.1 Stmt. ¶¶ 65-67.)
Plaintiff filed an Appeal to the Facilities Management Division
on July 28, 2008, and succeeded in keeping her evaluation score
at "4." (Compl. ¶ 58; Avallone Decl. Ex. KKK.) On July 29, 2008,
Yanosik reassigned Plaintiff from her private office to the
front desk, which was very busy and loud, and where she was
allegedly required to do work entirely by herself that had
previously been handled by multiple NYPD members. (Pl.'s 56.1
Stmt. ¶¶ 62-64, 70-71.)

On August 4, 2008, Plaintiff filed another OEEO Complaint
alleging that Yanosik had retaliated against her for filing the
previous OEEO Complaint. (Pl.'s 56.1 Stmt. ¶ 72.) Plaintiff
alleges that at some point after August 4, 2008, Yanosik denied
her request to attend a training mandatory for Plaintiff due to
her status as a Command Safety Officer. (Villar Decl. ¶ 12; see
Avallone Decl. Ex. MMM, at 3 (Plaintiff's letter to Yanosik
dated August 1, 2008 discussing mandatory training for new
position but neither requesting training nor claiming that

Yanosik had denied a request to attend training); Avallone Decl. Ex. OOO, at 3 (same, in August 4, 2008 letter from Plaintiff to Deputy Commissioner Neldra Zeigler, OEEO).) Plaintiff alleges that Captain Jesus Tellado told her that Yanosik denied her request because he wanted to "teach [her] not to put things in writing" and "show [her] who the boss was." (Villar Decl. ¶ 12.) However, the record does not include a Declaration or Deposition from Tellado. (See generally Avallone Decl.; Schowengerdt Decl.)

After investigating Plaintiff's June 2008 Complaint, the OEEO found in September 2008 that Plaintiff's Complaint did not rise to the level of a violation of Title VII or state or local law, and referred her Complaint to the IAB.[4] (Defs.' 56.1 Stmt. ¶ 82; Schowengerdt Decl. Ex. K.) On October 1, 2008, Plaintiff submitted a Complaint with the Deputy Commissioner of Budget and Management alleging that Yanosik had created a hostile work environment; she did not allege that the hostile work environment was related to her race, sex, or filing of discrimination complaints. (Pl.'s 56.1 Stmt. ¶ 73; Avallone Decl. Ex. PPP.)

On October 6, 2008, the date that Commissioner Weisel issued a Report and Recommendation recommending that Plaintiff

---

[4] IAB subsequently conducted an investigation and found in July 2010 that Plaintiff's claims were unsubstantiated. (Defs.' 56.1 Stmt. ¶¶ 83-84; Schowengerdt Decl. Ex. L.)

be found guilty and terminated, Plaintiff was suspended and placed on the Military and Extended Sick Desk; she remained there until her termination on April 8, 2009. (Defs.' 56.1 Stmt. ¶ 67; Pl.'s 56.1 Stmt. ¶ 74.) Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the New York State Division of Human Rights ("SDHR") on November 26, 2008, alleging discrimination on the basis of race and sex and retaliation. (Defs.' 56.1 Stmt. ¶ 85; Avallone Decl. Ex. B.) Plaintiff filed the instant action on August 21, 2009.

## II. DISCUSSION

### A. Legal Standard for Summary Judgment

A court should grant summary judgment when there is "no genuine dispute as to any material fact" and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); see Allianz Ins. Co. v. Lerner, 416 F.3d 109, 113 (2d Cir. 2005). Genuine issues of material fact cannot be created by conclusory allegations. Victor v. Milicevic, 361 F. App'x 212, 214 (2d Cir. 2010). Summary judgment is appropriate only when, after drawing all reasonable inferences in favor of a non-movant, no reasonable juror could find in favor of that party. Melendez v. Mitchell, 394 F. App'x 739, 740 (2d Cir. 2010).

In assessing when summary judgment should be granted, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could <u>reasonably</u> find for the plaintiff." <u>Id.</u> (citation omitted). The non-movant may not rely upon speculation or conjecture to overcome a motion for summary judgment. <u>Burgess v. Fairport Cent. Sch. Dist.</u>, 371 F. App'x 140, 141 (2d Cir. 2010). Instead, when the moving party has documented particular facts in the record, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." <u>FDIC v. Great Am. Ins. Co.</u>, 607 F.3d 288, 292 (2d Cir. 2010). Establishing such evidence requires going beyond the allegations of the pleadings, as the moment has arrived "to put up or shut up." <u>Weinstock v. Columbia Univ.</u>, 224 F.3d 33, 41 (2d Cir. 2000) (citation omitted). Thus, unsupported allegations in the pleadings cannot create a material issue of fact. <u>Id.</u>

B. Disparate Treatment Based on Race and Sex

1. Title VII and NYSHRL Claims

Courts in this Circuit analyze Title VII and NYSHRL claims of employment discrimination according to the three-stage, burden-shifting framework set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). <u>Simmons v. Akin Gump Strauss</u>

Hauer & Feld, LLP, 508 F. App'x 10, 12 (2d Cir. 2013). Under McDonnell Douglas, a plaintiff bears the initial, de minimis burden of establishing a prima facie case of discrimination. Beyer v. Cnty. of Nassau, 524 F.3d 160, 163 (2d Cir. 2008). To make out a prima facie case, a plaintiff must demonstrate, through direct or circumstantial evidence, that: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered from an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. Holcomb v. Iona Coll., 521 F.3d 130, 138 (2d Cir. 2008).

A plaintiff who makes out a prima facie case establishes a presumption of discrimination, at which point the burden of production shifts to the defendant to articulate a "legitimate, non-discriminatory reason" for the challenged conduct. Woodman v. WWOR-TV, Inc., 411 F.3d 69, 76 (2d Cir. 2005) (citation omitted). If the defendant produces such a reason, the plaintiff must then, without the benefit of the presumption of discrimination, "raise[] sufficient evidence upon which a reasonable jury could conclude by a preponderance of the evidence that the [adverse employment action] was based, at least in part," on discrimination. Holcomb, 521 F.3d at 141. Typically, plaintiffs who lack direct evidence of discrimination argue that the employer's stated reason for the challenged conduct is pretextual. Id. "[I]n many cases, a showing

of pretext, when combined with a prima facie case of discrimination, will be enough to permit a rational finder of fact to decide that the decision was motivated by an improper motive." Id. However, a showing of pretext is not required. Id. at 141-42. Instead, a plaintiff "alleging that an employment decision was motivated both by legitimate and illegitimate reasons may establish that the 'impermissible factor was a motivating factor, without proving that the employer's proffered explanation was not some part of the employer's motivation.'" Id. at 142.

Title VII's statute of limitations bars claims based on events occurring more than 300 days prior to filing a charge of discrimination with a state or local employment agency. 42 U.S.C. § 2000e-5(e)(1). Plaintiff filed an administrative Complaint with the SDHR and EEOC on November 26, 2008. (Avallone Decl. Ex. B.) Accordingly, only those incidents that occurred on or after January 31, 2008 are actionable under Title VII. Patterson v. Cnty. of Oneida, 375 F.3d 206, 220 (2d Cir. 2004) (noting that Title VII precludes recovery for discrete discriminatory acts that occurred outside the statutory time period even if other acts occurred within the time period). Discrimination claims under the NYSHRL are subject to a three-year statute of limitations. Lange v. Town of Monroe, 213 F. Supp. 2d 411, 418 (S.D.N.Y. 2002). As this action was brought on August 21, 2009, only those incidents occurring on or after

21

August 21, 2006 are actionable under the NYSHRL. Nonetheless, earlier incidents may be cited as background evidence in support of a timely Title VII or NYSHRL claim. <u>Anderson v. Nassau Cnty. Dep't of Corrs.</u>, 558 F. Supp. 2d 283, 299 (E.D.N.Y. 2008).

Villar alleges that NYPD violated Title VII and the NYSHRL by proffering disciplinary charges against her, prosecuting those charges, finding her guilty of those charges, terminating her, failing to promote her, and denying her overtime.

Plaintiff has failed to establish a <u>prima facie</u> case of discrimination as to her claim that the proffering of disciplinary charges against her constituted race- and/or sex-based discrimination, because she has not raised an issue of material fact as to whether the proffering of charges occurred under circumstances giving rise to an inference of discrimination. "A showing of disparate treatment — that is, a showing that an employer treated plaintiff 'less favorably than a similarly situated employee outside his protected group' — is a recognized method of raising an inference of discrimination for the purposes of making out a prima facie case." <u>Ruiz v. Cnty. of Rockland</u>, 609 F.3d 486, 493 (2d Cir. 2010) (citation omitted). "An employee is similarly situated to co-employees if they were (1) 'subject to the same performance evaluation and discipline standards' and (2) 'engaged in comparable conduct.'" <u>Id.</u> at 493-94 (citation omitted). "The standard for comparing

conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical." Id. at 494 (citation and alteration omitted). "In other words, the comparator must be similarly situated to the plaintiff 'in all material respects.'" Id. (citation omitted). Although "[t]he question of whether two employees are similarly situated is generally a triable issue for the fact-finder[,] . . . a plaintiff must offer sufficient evidence from which a jury could reasonably conclude that there was indeed disparate treatment of similarly situated employees." Beachum v. AWISCO N.Y., 785 F. Supp. 2d 84, 94 (S.D.N.Y. 2011).

Here, Plaintiff argues that the fact that McKoy was never charged with divulging confidential information to Plaintiff raises an inference of discrimination. (Pl.'s Opp'n 19.) Plaintiff points to no evidence in the record indicating McKoy's race, and accordingly fails to raise an inference of race discrimination on that basis. (See supra n.3.) Defendants' decision not to charge McKoy also does not raise an inference of sex discrimination, because he is not similarly situated to Plaintiff in all material respects. While Plaintiff shared official NYPD information with a civilian, McKoy shared that information with a higher-ranked member of the NYPD. (Defs.' 56.1 Stmt. ¶ 23; Villar Dep. 71:19-72:8.) The facts and circumstances of this conduct are materially distinct. NYPD has

an understandably greater interest in deterring NYPD members
from sharing information with non-NYPD civilians than in
deterring them from sharing information with other NYPD members.
No reasonable juror, reviewing the evidence in the record, could
find Plaintiff's conduct to have been comparable to McKoy's.
See, e.g., Cruz v. Coach Stores, Inc., 202 F.3d 560, 568 (2d
Cir. 2000) (finding as a matter of law that plaintiff who
engaged in a physical fight was not similarly situated to co-
workers whose offensive behavior involved words only); Humphreys
v. Cablevision Sys. Corp., No. 10 Civ. 4737, 2012 WL 5289566, at
*3 (E.D.N.Y. Oct. 23, 2012) (finding as a matter of law that
plaintiff was not similarly situated to comparator because,
inter alia, plaintiff had violated harassment policy by playing
offensive video for his subordinates while comparator had
violated harassment policy by failing to stop plaintiff from
showing offensive video). No other evidence in the record
suffices to raise an inference of race-based or sex-based
discrimination as to the promulgation of the charges against
Plaintiff.

Plaintiff has also failed to establish a prima facie case
as to whether NYPD discriminated against her by prosecuting her
and finding her guilty of the above charge.[5] Plaintiff points to

---

[5] Defendants argue that Plaintiff's claims are untimely insofar
as she was ultimately found guilty of the disciplinary charge

no similarly situated employees who were charged with comparable
conduct but not prosecuted similarly or found guilty. Although
Plaintiff argues that she is not guilty of the Charge, "this
Court is 'not interested in the truth of the allegations against
[P]laintiff' but in what 'motivated the employer.'" Del Pozo v.
Bellevue Hosp. Ctr., No. 09 Civ. 4729, 2011 WL 797464, at *6
(S.D.N.Y. Mar. 3, 2011) (quoting McPherson v. N.Y.C. Dep't of
Educ., 457 F.3d 211, 216 (2d Cir. 2006)). Here, the record does

---

against her on February 2, 2009 and terminated some months
later, after the filing of a charge with the EEOC on November
26, 2008. (See Defs.' Mem. L. Supp. Mot. Summ. J. ("Defs.'
Mem.") 3-5.) "Subsequent conduct is reasonably related to
conduct in an EEOC charge if: [1] the claim would fall within
the reasonably expected scope of an EEOC investigation of the
charges of discrimination; [2] it alleges retaliation for filing
the EEOC charge; or [3] the plaintiff 'alleges further incidents
of discrimination carried out in precisely the same manner
alleged in the EEOC charge.'" Alfano v. Costello, 294 F.3d 365,
381 (2d Cir. 2002) (quoting Butts v. City of N.Y. Dep't of Hous.
Pres. & Dev., 990 F.2d 1397, 1402-03 (2d Cir. 1993)).
Plaintiff's EEOC charge alleged race and gender discrimination
and, in a separate section, specifically discussed her
departmental trial under the heading "unfair and ungrounded
discipline" as a ground for discriminatory treatment. (See
Schowengerdt Decl. Ex. N.) Plaintiff's claims related to
subsequent developments in the same disciplinary process,
including the finding of guilt and the recommendation that
Plaintiff be terminated, were therefore properly exhausted
because she alleges they occurred "in the same manner and for
substantially the same reasons." Tullo v. City of Mount Vernon,
237 F. Supp. 2d 493, 498 (S.D.N.Y. 2002) (finding claim related
to termination following EEOC charge was properly exhausted);
see also Rommage v. MTA Long Island R.R., No. 08-CV-836, 2010 WL
4038754, at *7 (E.D.N.Y. Sept. 30, 2010) (finding claim related
to termination following EEOC charge was properly exhausted
because EEOC charge included allegations of unfounded discipline
and termination claim alleged an equivalent "method of
discrimination").

not contain evidence from which a reasonable juror could find
that the prosecution or finding of guilt occurred under
circumstances giving rise to an inference of race- or sex-based
discrimination.

However, Plaintiff has established a prima facie case as to
whether NYPD terminated her on the basis of her sex. Defendants
do not contest that Plaintiff has met the first two prima facie
prongs. (Defs.' Mem. 7-9.) They argue that Plaintiff's
termination was merely "the application of the NYPD's
disciplinary policies," which, "without more, does not
constitute an adverse employment action." (Id. at 8.) "A
plaintiff sustains an adverse employment action if he or she
endures a materially adverse change in the terms and conditions
of employment." Joseph v. Leavitt, 465 F.3d 87, 90 (2d Cir.
2006) (citation and internal quotation marks omitted). "Examples
of materially adverse changes include termination of employment,
a demotion evidenced by a decrease in wage or salary, a less
distinguished title, a material loss of benefits, significantly
diminished material responsibilities, or other indices unique to
a particular situation." Id. (citation omitted). Although the
Second Circuit has stated that "an employee does not suffer a
materially adverse change in the terms and conditions of
employment where the employer merely enforces its preexisting
disciplinary policies in a reasonable manner," id. at 91, it has

applied this dicta only in cases of suspension with paid leave.
See Brown v. City of Syracuse, 673 F.3d 141, 151 (2d Cir. 2012);
Joseph, 465 F.3d at 90-91. Defendants have cited no case law,
nor is the Court aware of any, applying this dicta to cases of
termination. Accordingly, the Court finds that Plaintiff's
termination constitutes an adverse employment action.[6]

Plaintiff has also established that her termination
occurred under circumstances giving rise to an inference of sex-
based discrimination. The record contains evidence that a male
lieutenant subject to the same performance evaluation and
discipline standards engaged in conduct comparable to
Plaintiff's but received a far less harsh penalty. (Compare
Schowengerdt Decl. Ex. G, with Schowengerdt Reply Decl. Ex. A.)[7]
In August 2010, Commissioner Grappone found the male lieutenant
guilty of, "having been made aware of criminal allegation made

---

[6] Even were the dicta in Joseph to apply to cases of termination,
here, as discussed infra, a reasonable juror could find that
NYPD's actions in terminating Plaintiff were unreasonable. See
Joseph, 465 F.3d at 91.

[7] Commissioner Grappone's August 12, 2010 Memorandum deciding the
charges against the male lieutenant was submitted on reply. "A
district court enjoys broad discretion . . . to rely on evidence
submitted with the reply papers." Dixon v. NBCUniversal Media,
LLC, 947 F. Supp. 2d 390, 396 (S.D.N.Y. 2013) (citation
omitted). "[A] court may choose to admit such evidence where the
opposing party will suffer no prejudice." Id. Commissioner
Grappone's Memorandum, rather than prejudicing Plaintiff,
supports her argument by permitting an inference of
discrimination. Accordingly, the Court will consider
Commissioner Grappone's Memorandum.

against a civilian acquaintance, contact[ing] said acquaintance
and wrongfully divulge[ing] or discuss[ing] official Department
business without permission or authority to do so."
(Schowengerdt Reply Decl. Ex. A, at COM 0063.) According to
Commissioner Grappone, the male lieutenant, after learning from
a co-worker that his civilian friend was being investigated for
rape allegations, called his civilian friend, told the friend
about his earlier conversation with his co-worker, and asked the
friend whether he had raped someone. (Id. at COM 0127.) The
civilian friend subsequently called the lieutenant's co-worker
and told him he "didn't rape no girl." (Id. at COM 0126.)
Commissioner Grappone found that the male lieutenant's call to
his friend "let[] [the friend] know that the Department was
investigating allegations of a rape that [the friend] possibly
committed." (Id. at COM 0127-28.)

    A reasonable juror could find there to be no material
difference between Plaintiff's conduct and the conduct of the
male lieutenant, as described by the Assistant Deputy
Commissioners adjudicating their trials. Both Plaintiff and the
male lieutenant provided information to civilians about official
NYPD investigations. (Schowengerdt Decl. Ex. G, at DOA0044-
DOA0052; Schowengerdt Reply Decl. Ex. A, at COM0125-COM0128.)
Arguably, Plaintiff's conduct was less problematic than the male
lieutenant's; Commissioner Weisel did not find that Plaintiff

knew Alberto was involved in narcotics trafficking or was the
subject of the NYPD's narcotics investigation, whereas
Commissioner Grappone found that the male lieutenant knew that
the civilian he contacted was the subject of the NYPD's rape
investigation and "was in fact letting him know that the
Department was investigating allegations of a rape that [he]
possibly committed." (Schowengerdt Decl. Ex. G, at DOA0044-
DOA0052; Schowengerdt Reply Decl. Ex. A, at COM0127-COM0128.)

Defendants argue that Plaintiff is not similarly situated
to the male lieutenant because she sought out the information
she gave to Alberto whereas the male lieutenant's co-worker told
him about the rape investigation without any prompting by the
lieutenant. (Defs.' Reply Mem. L. Supp. Mot. Summ. J. ("Defs.'
Reply") 7; Schowengerdt Decl. Ex. G, at DOA0047; Schowengerdt
Reply Decl. Ex. A, at COM0126-COM0127.) The Court notes,
however, that the Charge against Plaintiff and the male
lieutenant was not seeking information about official Department
business but "divulg[ing] or discuss[ing] official Department
business" wrongfully and without authorization. (Schowengerdt
Decl. Ex. G, at DOA0004; Schowengerdt Reply Decl. Ex. A, at
COM0060.) Defendants also argue that "according to the findings
at the officer's departmental trial," the male lieutenant "did
not call his friend with the purpose of disclosing" information
about the rape investigation. (Defs.' Reply 7.) However,

Defendants do not support this argument, instead citing to evidence that the male lieutenant's disclosure was purposeful. (See id. (citing Schowengerdt Reply Decl. Ex. A, at COM0124-COM0128, COM 0136).) Defendants also argue that Plaintiff's conduct is distinct from the male lieutenant's because she "sought out information that could benefit her own private interests and disclosed that information to family members in furtherance of those interests." (Id.) Defendants do not make clear what "private interests" they are discussing and cite to no evidence in support of this argument. (See id.) To the extent Defendants are implying that Plaintiff was involved in her brothers' narcotics activities, the record makes clear that IAB declined to charge Plaintiff with money laundering or other involvement and instead found that no charges other than the disclosure charge were substantiated. (Johnson Dep. 40:21-41:21, 43:9-17.) In addition, the Memorandum from the male lieutenant's trial indicates that he may have had his "own private interests" in contacting his friend; prior to the male lieutenant contacting his friend, the male lieutenant's co-worker told him that the NYPD was investigating either the male lieutenant or his friend for rape. (Schowengerdt Reply Decl. Ex. A, at COM0127.)

Here, a reasonable jury could find that Plaintiff and the male lieutenant were similarly situated in all material respects

and that the discrepancy between their penalties — termination for the Plaintiff and a forfeiture of 35 vacation days for the male lieutenant — constitutes disparate treatment. See Beachum, 785 F. Supp. 2d at 94 ("The question of whether two employees are similarly situated is generally a triable issue for the factfinder."); (Schowengerdt Decl. Ex. G, at DOA0054; Schowengerdt Reply Decl. Ex. A, at COM0060.). Because the lieutenant is a man and therefore not in Plaintiff's protected class, Plaintiff has raised an inference of sex-based discrimination sufficient to establish a prima facie case. See Ruiz, 609 F.3d at 493. However, as neither Plaintiff nor Defendants have identified the race of the male lieutenant, the same evidence would not permit an inference of race discrimination. (See Avallone Decl. Ex. VVV, at 1, COM0059-COM0064; Schowengerdt Reply Decl. Ex. A; Villar Decl. ¶ 11; see also Defs.' Reply 6.)[8] Nor does the record contain other evidence sufficient to raise an inference of race discrimination as to Plaintiff's termination.

---

[8] The first page of Avallone Decl. Ex. VVV makes clear that, of the four male comparators whose disciplinary records are included in Ex. VVV, one is Caucasian, two are African-American, and one is Hispanic. (Avallone Decl. Ex. VVV, at 1.) However, Plaintiff does not identify which comparator is of which race. (Avallone Decl. Ex. VVV; Villar Decl. ¶ 11.) Accordingly, the Court cannot identify the race of the male lieutenant found guilty of disclosing information to a civilian.

As Defendants state, Commissioner Weisel's findings and recommendation of termination constitute a legitimate, nondiscriminatory reason for Plaintiff's termination. (Defs.' Mem. 9.) However, Plaintiff has raised genuine issues of material fact as to whether this reason is pretextual. Departures from procedural regularity can be evidence of pretext. Bagley v. J.P. Morgan Chase & Co., No. 10 Civ. 1592, 2012 WL 2866266, at *15 (S.D.N.Y. July 12, 2012) (citing cases) ("Although 'violation of an organization's internal procedures alone is insufficient to create an inference of discrimination . . . , failure to follow internal procedures can be evidence of pretext.'") (citation and alterations omitted); see also Greenway v. Buffalo Hilton Hotel, 143 F.3d 47, 51 (2d Cir. 1998) ("The evidence of [defendant]'s inconsistent application of its disciplinary policy was sufficient for the jury to have decided properly that the employer's defense was simply a pretext for discrimination."); Stern v. Trs. of Columbia Univ., 131 F.3d 305, 313 (2d Cir. 1997) ("[D]epartures from procedural regularity . . . can raise a question as to the good faith of the process where the departure may reasonably affect the decision.") (citation omitted).

Here, Plaintiff has marshaled evidence that Defendants' process for terminating her departed from procedural regularity. The record indicates that the normal procedure for determining

the penalty for an NYPD member found guilty at trial required
the Assistant Deputy Commissioner who adjudicated the trial to
review the member's disciplinary record, and to provide the
member with "the right to review these same records before" the
Assistant Deputy Commissioner reviewed them. (Avallone Decl. Ex.
K (emphasis added).) However, although Plaintiff exercised her
right to review her disciplinary record (Avallone Decl. Ex. I,
at 1), a reasonable juror could find that she received a
different version of her CPI than the CPI reviewed by
Commissioner Weisel. (Compare id. at 4, with Avallone Decl. Ex.
J, at IAB0473.) The CPI that Weisel allegedly reviewed had
thirty-one event records, stated that NYPD had conducted an
internal investigation regarding the allegation of "ASSOCIATION:
NARCOTICS (FAMILY MEMBER)," and listed the disposition of that
allegation as "SUBSTANTIATED." (Avallone Decl. Ex. J, at
IAB0473.) However, the CPI that Plaintiff allegedly reviewed had
thirty event records and did not state that NYPD had conducted
or substantiated an internal investigation regarding
"ASSOCIATION: NARCOTICS (FAMILY MEMBER)." (Avallone Decl. ¶ 11 &
Ex. I, at 4.) Accordingly, Plaintiff did not have the
opportunity to contest the accuracy of the CPI that Weisel
reviewed. (Villar Decl. ¶ 17.) Such an opportunity could have
been particularly useful here, where the record indicates that
IAB never substantiated any violations or allegations against

Plaintiff other than the Charge for disclosure of official
Department business. (Johnson Dep. 41:19-21, 43:9-17.)

In addition, "[a] showing that similarly situated employees
belonging to a different [protected class] received more
favorable treatment can also serve as evidence that the
employer's proffered legitimate, non-discriminatory reason for
the adverse job action was a pretext for . . . discrimination."
Graham v. Long Island R.R., 230 F.3d 34, 43 (2d Cir. 2000); see
also Gorzynski v. Jetblue Airways Corp., 596 F.3d 93, 108 (2d
Cir. 2010) ("[T]he fact that other younger employees were not
disciplined for violating numerous policies is both prima facie
evidence of discrimination (i.e., it suggests that [Plaintiff]
may have been treated differently from similarly situated co-
workers), and evidence that the reasons given by [Defendant] for
firing [Plaintiff] were pretextual.").

Here, the stark contrast between the penalties administered
to Plaintiff and the similarly situated male lieutenant for
comparable conduct is strong evidence that Defendants' stated
rationale is pretextual. The male lieutenant was found guilty of
four separate specifications, including one specification
comparable to Plaintiff's conduct. (Schowengerdt Reply Decl. Ex.
A, at COM0059-60.) Commissioner Grappone found that the male
lieutenant engaged in a "very serious act of misconduct" and
that the "consequences of this act could lead to [the subject of

an investigation] fleeing and possibly never be [sic] caught to face his crime." (Id.) The appropriate penalty for this "very serious act of misconduct" was, according to Commissioner Grappone, a forfeiture of twenty-five vacation days; to Commissioner Kelly, the appropriate penalty was a forfeiture of thirty-five vacation days. (Id. at COM0060, COM0136.) Although a reasonable jury could find that Plaintiff's conduct was comparably serious or less serious than the male lieutenant's, Plaintiff was terminated. The evidence that Plaintiff was administered a significantly harsher penalty than a similarly situated male comparator, in combination with evidence of procedural irregularities in the determination of her penalty, is sufficient for a reasonable jury to find that Defendants' stated rationale is pretextual. See Graham, 230 F.3d at 43; Stern, 131 F.3d at 313.

"[E]vidence satisfying the minimal McDonnell Douglas prima facie case, coupled with evidence of falsity of the employer's explanation, may or may not be sufficient to sustain a finding of discrimination." James v. N.Y. Racing Ass'n, 233 F.3d 149, 156-57 (2d Cir. 2000). "[T]he way to tell whether a plaintiff's case is sufficient to sustain a verdict is to analyze the particular evidence to determine whether it reasonably supports an inference of the facts plaintiff must prove – particularly discrimination." Id. at 157. "The relevant factors identified by

the Supreme Court 'include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports or undermines the employer's case.'" Id. at 156 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148-49 (2000)) (alterations omitted).

Here, Plaintiff's prima facie case is strong, and she provides probative evidence of pretext in Defendants' rationale. Defendants argue that Plaintiff's admission that she disclosed NYPD information to Alberto, in combination with Commissioner Weisel's finding that she was guilty of disclosing official NYPD information to Alberto, undermines her arguments. (Defs.' Mem. 9-10.) However, the issue before the Court on this claim is not whether Plaintiff was guilty of disclosing official NYPD information, but whether her termination was motivated, even in part, by her sex. The evidence that a similarly situated male lieutenant who engaged in comparable or worse conduct than Plaintiff received a much lighter penalty, in combination with the evidence that Defendants departed from procedural regularity by providing Commissioner Weisel with an inaccurate and version of Plaintiff's disciplinary record than they provided to Plaintiff, is legally sufficient for a reasonable jury to find that Defendants terminated Plaintiff in part on the basis of her sex. See Kwan v. Andalex Grp. LLC, 737 F.3d 834, 847 (2d Cir.

2013) (holding that plaintiff's <u>prima facie</u> case plus evidence of pretext sufficed to permit reasonable juror to infer that retaliation was but-for cause of adverse action). Accordingly, summary judgment is inappropriate on this claim. <u>See</u> <u>James v.</u> <u>N.Y.C. Health & Hosps. Corp.</u>, No. 12 Civ. 8762, 2014 WL 1485393, at *5 (S.D.N.Y. Apr. 15, 2014) ("[C]ourts must be 'particularly cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is in question.'") (quoting <u>Schwapp v. Town of Avon</u>, 118 F.3d 106, 110 (2d Cir. 1997)).

Next, Plaintiff alleges that Defendants denied her promotions on the bases of her race and sex. Plaintiff fails to establish a <u>prima facie</u> case of discrimination on this claim because she has not raised an issue of material fact as to whether the alleged promotion denial occurred under circumstances giving rise to an inference of discrimination. Plaintiff provides no evidence that an individual outside of her protected class was promoted while on modified duty, and the record is devoid of other evidence on which a reasonable juror might conclude that Plaintiff was not promoted based on her race or sex.

Even assuming Plaintiff established a <u>prima facie</u> case of discrimination, Defendants have set forth a legitimate, nondiscriminatory reason for not promoting her: NYPD policy

prohibited members not on full duty status from being considered for promotion, and Plaintiff was not on full duty status during the time she claims she was denied promotions. (Defs.' Mem. 12.) Plaintiff has not raised an issue of fact as to whether this rationale was pretextual. The record shows that NYPD's written policy stated that NYPD members not on full duty status would not be considered for promotion, and Plaintiff admits that her modified duty status made her ineligible for promotion. (Schowengerdt Decl. Ex. P; see also Pl.'s Resp. Defs.' 56.1 Stmt. ¶¶ 79-80.) Plaintiff argues that Defendants' failure to bring her to trial in a speedy manner resulted in her remaining on modified duty for an unnecessarily lengthy period of time. (Pl.'s Resp. Defs.' 56.1 Stmt. ¶ 79.) However, the record indicates that NYPD's investigation of Plaintiff was complex and that IAB was investigating Plaintiff until approximately July 2008, the month in which Plaintiff's trial began. (Johnson Dep. 16:17-25:4, 39:7-41:7; Schowengerdt Decl. Ex. G, at DOA0004.) The length of Defendants' investigation and the evidence in the remainder of the record is insufficient to show that Defendants' rationale is pretextual.

Next, Plaintiff contends that Defendants denied her overtime opportunities based on her sex and race. Plaintiff argues that her allegations of overtime denials occurring between November 2004 and August 2006 are timely pursuant to the

continuing violation doctrine, because they occurred pursuant to
a practice and policy of discrimination. (Pl.'s Opp'n 8-9.)
However, Plaintiff cites to Second Circuit case law issued prior
to the Supreme Court's 2002 decision in Nat'l R.R. Passenger
Corp. v. Morgan, in which the Supreme Court held that "discrete
discriminatory acts are not actionable if time barred, even when
they are related to acts alleged in timely filed charges." 536
U.S. 101, 113 (2002). In considering whether plaintiffs may
apply the continuing violations doctrine to discrete acts
occurring pursuant to a policy of discrimination, the Second
Circuit subsequently held that "[d]iscrete acts . . . , which
fall outside the limitations period, cannot be brought within
it, even when undertaken pursuant to a general policy that
results in other discrete acts occurring within the limitations
period." Chin v. Port Auth. of N.Y. & N.J., 685 F.3d 135, 157
(2d Cir. 2012). Plaintiff's allegations of overtime violations
occurring between November 2004 and August 2006 constitute
discrete acts. See, e.g., Consoli v. St. Mary Home/Mercy Cmty.
Health, No. 13 Civ. 1791, 2014 WL 3849978, at *4 (D. Conn. Aug.
5, 2014) (holding that plaintiff's allegations related to denial
of overtime were discrete acts, time-barred, and not
individually actionable); Anderson v. N.Y.C. Dep't of Corr., No.
12 Civ. 4064, 2013 WL 5229790, at *3 (S.D.N.Y. Aug. 19, 2013)
(same), report and recommendation adopted by 2013 WL 5229790, at

39

*1 (S.D.N.Y. Sept. 17, 2013); Stewart v. City of New York, No.
11 Civ. 6935, 2012 WL 2849779, at *8 (S.D.N.Y. July 10, 2012)
("[T]he failure to give benefits [such as overtime] is generally
a discrete act."). Accordingly, the alleged overtime denials
occurring between November 2004 to August 2006 cannot be brought
within the statute of limitations pursuant to a continuing
violations theory and are time-barred.

Plaintiff has failed to establish a prima facie case of
discrimination as to the alleged overtime denials occurring
between May 2008 and October 2008, because the record does not
permit a reasonable juror to find that they occurred under
circumstances giving rise to an inference of discrimination.
Although the record indicates that Plaintiff's overtime earnings
decreased after Yanosik returned in May 2008, it does not
contain evidence of what other BMS lieutenants earned in
overtime between May 2008 and October 2008. (See Pl.'s 56.1
Stmt. ¶ 60.) The record indicates that Plaintiff was the third
highest overtime earner among the five BMS lieutenants from
January 2007 through July 2008. (Defs.' 56.1 Stmt. ¶ 83; Pl.'s
Resp. Defs.' 56.1 Stmt. ¶ 83.) But that information does not
indicate whether other lieutenants' overtime earnings decreased,
increased, or stayed the same after Yanosik's return. This
evidence, in combination with the evidence in the remainder of

the record, is not sufficient to raise an inference of race or sex discrimination.

Accordingly, Defendants' Motion for Summary Judgment is GRANTED as to Plaintiff's Title VII and NYSHRL disparate treatment claims regarding the proffering of disciplinary charges against Plaintiff, prosecution of those charges, finding of guilt on those charges, failure to promote, and denial of overtime. Defendants' Motion is also GRANTED as to Plaintiff's Title VII and NYSHRL race-based disparate treatment claims regarding her termination. However, Defendants' Motion for Summary Judgment is DENIED as to Plaintiff's Title VII and NYSHRL sex-based disparate treatment claims regarding her termination.

        2. NYCHRL Claims

    The NYCHRL "'explicitly requires an independent liberal construction analysis in all circumstances,' an analysis that 'must be targeted to understanding and fulfilling what the statute characterizes as the City HRL's uniquely broad and remedial purposes, which go beyond those of counterpart state or federal civil rights laws.'" Bennett v. Health Mgmt. Sys., Inc., 92 A.D.3d 29, 34 (N.Y. App. Div. 2011) (citation omitted); see also Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013) ("[C]ourts must analyze NYCHRL claims

41

separately and independently from any federal and state law claims, construing the NYCHRL's provisions 'broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible.'") (citation omitted).

> For an NYCHRL claim to survive a summary judgment motion,
>
> the plaintiff need only show that her employer treated her less well, at least in part for a discriminatory reason. The employer may present evidence of its legitimate, non-discriminatory motives to show the conduct was not caused by discrimination, but it is entitled to summary judgment on this basis only if the record establishes as a matter of law that "discrimination play[ed] <u>no</u> role" in its actions.

<u>Mihalik</u>, 715 F.3d at 110 n.8 (citation omitted). "[S]ummary judgment dismissing a claim under the NYCHRL should be granted only if 'no jury could find defendant liable under any of the evidentiary routes — <u>McDonnell Douglas</u>, mixed motive, direct evidence, or some combination thereof.'" <u>Melman v. Montefiore Med. Ctr.</u>, 98 A.D.3d 107, 113 (N.Y. App. Div. 2012) (citation omitted). However, these evidentiary routes are not applied to Title VII and NYCHRL claims in identical ways. For instance, "to make out the third prong of a prima facie case of discrimination under the NYCHRL, a plaintiff must simply show that she was treated differently from others in a way that was more than trivial, insubstantial, or petty." <u>Williams v. Regus Mgmt. Grp., LLC</u>, 836 F. Supp. 2d 159, 173 (S.D.N.Y. 2011); <u>see also</u> <u>Lytle v. JPMorgan Chase</u>, No. 08 Civ. 9503, 2012 WL 393008, at *19

(S.D.N.Y. Feb. 8, 2012) (NYCHRL plaintiff "does not need to demonstrate that he was subject to a materially adverse employment action"), adopted by 2012 WL 1079964 (S.D.N.Y. Mar. 30, 2012), aff'd by 518 F. App'x 49 (2d Cir. 2013).

A three-year statute of limitations applies to NYCHRL claims. N.Y. City Admin. Code § 8-502(d); see Odom v. Doar, 497 F. App'x 88, 89 (2d Cir. 2012). However, pursuant to the continuing violations doctrine as applied to the NYCHRL, "otherwise time-barred discrete acts can be considered timely where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." Morgan v. N.Y. State Attorney Gen.'s Office, No. 11 Civ. 9389, 2013 WL 491525, at *12 (S.D.N.Y. Feb. 8, 2013) (citation and alteration omitted); see also Fleming v. MaxMara USA, Inc., 644 F. Supp. 2d 247, 269 (E.D.N.Y. 2009) ("A continuing violation may be found where there is proof of specific ongoing discriminatory policies or practices . . . .") (citation and alteration omitted).

Here, Villar's disparate treatment claim regarding the alleged denial of overtime between November 2004 and August 2006 is time-barred because the alleged denials fall outside NYCHRL's statute of limitations, and the record fails to show that they were part of a discriminatory policy or practice. Aside from her conclusory allegations, Plaintiff has presented no evidence that

the alleged overtime denials were pursuant to a specific ongoing
race- or sex-based discriminatory policy or practice by NYPD, or
that NYPD permitted specific and related overtime denials to
continue unremedied in a manner that amounted to a policy of
discrimination on the basis of race or sex. (See generally Pl.'s
Resp. Defs.' 56.1 Stmt.; Pl.'s 56.1 Stmt; Pl.'s Opp'n 10.)
Accordingly, the November 2004 to August 2006 overtime denials
are not part of a continuing violation and are time-barred.

        The evidence discussed supra Part II.B.1 and in the
remainder of the record does not meet Plaintiff's burden to show
that the City's proffering of disciplinary charges, prosecution
of those charges, finding of guilt on those charges, alleged
failure to promote, and alleged denial of overtime were "caused
at least in part by discriminatory . . . motives." Mihalik, 715
F.3d at 113. Nor does the record permit a reasonable juror to
find that Plaintiff was terminated at least in part because of
her race. Accordingly, Defendants' Motion for Summary Judgment
on Plaintiff's NYCHRL disparate treatment claims regarding the
proffering of disciplinary charges against Plaintiff,
prosecution of those charges, finding of guilt on those charges,
failure to promote, and denial of overtime is GRANTED, as is
Defendants' Motion as to Plaintiff's NYCHRL race-based disparate
treatment claim regarding her termination. However, Defendants'

Motion for Summary Judgment is DENIED as to Plaintiff's NYCHRL sex-based disparate treatment claim regarding her termination.[9]

C. Hostile Work Environment Claims[10]

1. Title VII and NYSHRL Claims

"In order to survive summary judgment on a claim of hostile work environment harassment, a plaintiff must produce evidence that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's

---

[9] "[F]ederal and state civil rights laws [are] a floor below which the City's Human Rights law cannot fall . . . ." N.Y.C. Local Law No. 85 of 2005, at § 1 (Oct. 3, 2005). Thus, the Court denies without further analysis Defendants' Motion for Summary Judgment as to Plaintiff's NYCHRL sex-based disparate treatment claim regarding her termination. See Clarke v. InterContinental Hotels Grp., PLC, No. 12 Civ. 2671, 2013 WL 2358596, at *11 n.13 (S.D.N.Y. May 30, 2013) (denying motion to dismiss NYCHRL retaliation claim, "without further analysis," because court had denied defendant's motion to dismiss plaintiff's Title VII retaliation claim).

[10] Defendants argue in a footnote that Plaintiff's hostile work environment claim should be dismissed for failure to exhaust her administrative remedies, because her EEOC Charge "alleges at most a claim of disparate treatment." (Defs.' Mem. 14 n.7.) However, Plaintiff's EEOC Charge explicitly alleged a hostile work environment, and, in a separate section of her EEOC Complaint, alleged the conduct that she now claims constitutes her hostile work environment claim. (Schowengerdt Decl. Ex. N; Pl.'s Opp'n 22-23.) Accordingly, Plaintiff exhausted her administrative remedies as to her hostile work environment claim. Cf. Cruz, 202 F.3d at 570 n.5 (noting that plaintiff's "allegation in her EEOC complaint of 'unpermitted touching by supervisors'" was sufficient for the court to consider her claim of sex-based hostile work environment).

employment.'" Cruz, 202 F.3d at 570 (citation omitted). "A
hostile working environment is shown when the incidents of
harassment occur either in concert or with a regularity that can
reasonably be termed pervasive." Fincher v. Depository Trust &
Clearing Corp., 604 F.3d 712, 724 (2d Cir. 2010) (citation
omitted). It "can also be established through evidence of a
single incident of harassment that is 'extraordinarily severe.'"
Id. (citations omitted). "A work environment will be considered
hostile if a reasonable person would have found it to be so and
if the plaintiff subjectively so perceived it." Brennan v.
Metro. Opera Ass'n, Inc., 192 F.3d 310, 318 (2d Cir. 1999). "A
plaintiff must also demonstrate that she was subjected to the
hostility because of her membership in a protected class." Id.

     Whether a reasonable person would find a given work
environment hostile depends on the totality of the
circumstances, consideration of which includes: (1) frequency of
the conduct, (2) severity of the conduct, (3) whether the
conduct is physically threatening or humiliating, or a mere
offensive utterance, and (4) whether the conduct unreasonably
interferes with the employee's work performance. Harris v.
Forklift Sys., Inc., 510 U.S. 17, 23 (1993). "While a mild,
isolated incident does not make a work environment hostile, the
test is whether 'the harassment is of such quality or quantity
that a reasonable employee would find the conditions of her

employment altered for the worse.'" Gutierrez v. City of New
York, 756 F. Supp. 2d 491, 512 (S.D.N.Y. 2010) (quoting Whidbee
v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 70 (2d Cir.
2000)). "The environment need not be 'unendurable' or
'intolerable.' Nor must the victim's 'psychological well-being'
be damaged." Terry v. Ashcroft, 336 F.3d 128, 148 (2d Cir. 2003)
(citations omitted). "In short, 'the fact that the law requires
harassment to be severe or pervasive before it can be actionable
does not mean that employers are free from liability in all but
the most egregious cases.'" Id. (citation omitted). "Where
reasonable jurors could disagree as to whether alleged incidents
would have adversely altered the working conditions of a
reasonable employee, the issue of whether a hostile work
environment existed may not properly be decided as a matter of
law." Gutierrez, 756 F. Supp. 2d at 512 (citing Patterson v.
Cnty. of Oneida, 375 F.3d at 227).

    "[C]onsideration of the entire scope of a hostile work
environment claim, including behavior alleged outside the
statutory time period, is permissible for the purposes of
assessing liability, so long as an act contributing to that
hostile environment takes place within the statutory time
period." Morgan, 536 U.S. at 105. "[I]f 'any act falls within
the statutory time period,' we need 'to determine whether the
acts about which an employee complains are part of the same

actionable hostile work environment practice.'" McGullam v.
Cedar Graphics, Inc., 609 F.3d 70, 76 (2d Cir. 2010) (quoting
Morgan, 536 U.S. at 120). An "incident within the limitations
period permits consideration of an incident preceding the
limitations period only if the incidents are sufficiently
related." McGullam, 609 F.3d at 77. The Supreme Court has
explained:

> (1) Acts on days 1-400 create a hostile work environment.
> The employee files the charge on day 401. Can the
> employee recover for that part of the hostile work
> environment that occurred in the first 100 days? (2)
> Acts contribute to a hostile environment on days 1-100
> and on day 401, but there are no acts between days 101-
> 400. Can the act occurring on day 401 pull the other
> acts in for the purposes of liability? In truth, all
> other things being equal, there is little difference
> between the two scenarios as a hostile environment
> constitutes one "unlawful employment practice" and it
> does not matter whether nothing occurred within the
> intervening 301 days so long as each act is part of the
> whole. Nor, if sufficient activity occurred by day 100
> to make out a claim, does it matter that the employee
> knows on that day that an actionable claim happened; on
> day 401 all incidents are still part of the same claim.
> On the other hand, if an act on day 401 had no relation
> to the acts between days 1-100, or for some other reason,
> such as certain intervening action by the employer, was
> no longer part of the same hostile environment claim,
> then the employee cannot recover for the previous acts,
> at least not by reference to the day 401 act.

Morgan, 536 U.S. at 118. The Second Circuit has further noted
that an "incident-free interval does not preclude relatedness,"
but it can "render[] less plausible the notion that [conduct
occurring within the statute of limitations] is of a piece with

[conduct occurring outside of the statute of limitations]." McGullam, 609 F.3d at 78.

Plaintiff alleges that Yanosik's alleged behavior between November 2004 and August 2006 is part of the same actionable hostile work environment practice as his alleged behavior between May 2008 and October 2008. Indeed, the allegations regarding both periods are very similar. Plaintiff argues that in both periods the same supervisor, in the same department, denied her overtime opportunities and degraded her position as a lieutenant by, in the first period, denying her supervisory responsibilities and, in the second period, requiring her to do menial tasks. (Avallone Decl. Ex. FF; Defs.' 56.1 Stmt. ¶¶ 49-50, 55; Pl.'s Resp. Defs.' 56.1 Stmt. ¶¶ 49-50, 58-59; Pl.'s 56.1 Stmt. ¶ 49, 60; Meyer Dep. 43:12-16, 65:10-24; Villar Decl. ¶ 16; Villar Dep. 213:14-15.) While the twenty-one-month gap, in normal circumstances, would make it less plausible that the conduct is sufficiently related to constitute a continuing violation, the circumstances here are unusual: Yanosik took a voluntary educational leave of absence from his position as BMS Commanding Officer and returned to the same position after completing his leave. (Defs.' 56.1 Stmt. ¶¶ 51, 54.) Here, the similarity in perpetrator, unit assignment, and type of conduct make clear that the acts committed in the first period and the second period are part of the same actionable hostile work

49

environment practice. See Morgan, 536 U.S. at 120-21 (affirming finding that conduct was part of same actionable hostile work environment claim where the pre- and post-limitation period incidents "involved the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers") (citation and alteration omitted); McGullam, 609 F.3d at 77-78 (finding earlier conduct "insufficiently related" to action occurring within the statute of limitations because earlier conduct was different type of harassment that occurred in different department and involved different personnel). Accordingly, "it does not matter whether nothing occurred within the intervening" twenty-one-months, Morgan, 536 U.S. at 118, and the Court may consider Yanosik's alleged behavior between November 2004 and August 2006 as part of Plaintiff's hostile work environment claim.

In support of her claims, Plaintiff points to evidence that Yanosik denied her overtime opportunities, placed her under the supervision of a Sergeant, removed her supervisory responsibilities, reassigned her from a private office to the front desk, assigned her too many duties, yelled at her at least once, told her to clean the basement once, and temporarily lowered her Evaluation score from a "4" to a "3." (Pl.'s Opp'n 22; see supra Part I.) In addition, Plaintiff alleges that

NYPD's placing her on modified duty for five years contributed to the hostile work environment. (Pl.'s Opp'n 22.)

The evidence fails to support a finding that NYPD placed Plaintiff on modified duty or kept her on modified duty for five years even in part because of her race or sex, and as such, Plaintiff's modified duty status cannot be considered as part of her hostile work environment claim. See Brennan, 192 F.3d at 318. The evidence indicates that upon filing the Charge and Specification against Plaintiff, NYPD's procedure called for Plaintiff to be assigned to modified duty pending determination of the Charge. (See Schowengerdt Decl. Ex. Q.) No reasonable juror could find that Defendants filed the Charge and Specification against Plaintiff on the basis of her race or sex. (See supra Part II.B.1.) Moreover, the four-year investigation of Plaintiff was complex, and no evidence indicates that Defendants drew out the length of the investigation on the basis of her race or sex. (See Johnson Dep. 16:17-25:4, 39:7-41:7; Schowengerdt Decl. Ex. G, at DOA0004.)

The other events that comprise Plaintiff's hostile work environment claim were not sufficiently severe or pervasive to alter the conditions of her employment. See Cruz, 202 F.3d at 570. None of incidents Plaintiff alleges were "extraordinarily severe." See Fincher, 604 F.3d at 724. Nor was the conduct physically threatening. See Harris, 510 U.S. at 23. Plaintiff

alleges that she was humiliated when Yanosik placed her under
the supervision of a Sergeant and told her to clean the
basement. (Pl.'s 56.1 Stmt. ¶ 39; Pl.'s Opp'n 22.) Although she
does not identify the times when she was denied overtime
opportunities, she claims that, at least between 2004 and 2006,
she was offered fewer overtime opportunities than other
lieutenants. (Pl.'s 56.1 Stmt. ¶ 49.) She also alleges that
being placed at the busy front desk interfered with her ability
to complete substantive work. (Pl.'s 56.1 Stmt. ¶¶ 62-64, 70-
71.) Upon considering all of Plaintiff's allegations and
examining them based on the totality of the circumstances, no
reasonable juror could find them to rise to the level of a
hostile work environment pursuant to Title VII or NYSHRL. <u>See,
e.g.</u>, <u>De La Cruz v. City of New York</u>, 783 F. Supp. 2d 622, 644
(S.D.N.Y. 2011) (holding that allegations of work reassignment,
schedule changes, increased scrutiny of plaintiff's work, and a
supervisor's stray remarks were insufficient to establish
hostile work environment); <u>Gibson v. Wyeth Pharms., Inc.</u>, No. 07
Civ. 946, 2011 WL 830671, at *11 (S.D.N.Y. Mar. 9, 2011)
(holding that allegations of explicitly racial comment, three-
day suspension, forced overtime, and written warning were
insufficient to establish hostile work environment).

52

Accordingly, Defendants' Motion for Summary Judgment as to
Plaintiff's Title VII and NYSHRL hostile work environment claims
is GRANTED.


   2. NYCHRL Claim

   NYCHRL claims must be reviewed "separately and
independently from any federal and state law claims, construing
the NYCHRL's provisions 'broadly in favor of discrimination
plaintiffs, to the extent that such a construction is reasonably
possible.'" Mihalik, 715 F.3d at 109 (citation omitted). "In
determining whether a claim of hostile work environment survives
summary judgment" under the NYCHRL, "the relevant consideration
is whether there is a triable issue of fact as to whether the
plaintiff 'has been treated less well than other employees
because of'" his or her protected status. Barounis v. N.Y.C.
Police Dep't, No. 10 Civ. 2631, 2012 WL 6194190, at *9 (S.D.N.Y.
Dec. 12, 2012) (quoting Williams v. N.Y.C. Hous. Auth., 872
N.Y.S.2d 27, 39 (App. Div. 1st Dep't 2009)). Thus, a plaintiff
need not "show 'severe and pervasive' conduct to establish a
hostile work environment claim" under the city statute. Id. "The
NYCHRL, though, is not a 'general civility code' and 'petty
slights and trivial inconveniences' are not actionable under
it." Id. (quoting Williams, 872 N.Y.S.2d at 40-41). "As under
Title VII, hostile work environment claims under [the NYCHRL]

may be based on events outside the statute of limitations period to the extent they constitute 'part of the same actionable hostile work environment practice,' and at least one act contributing to the claim occurs within the filing period." Gutierrez, 756 F. Supp. 2d at 501 (citation omitted).

Taken together, the record evidence that Yanosik denied her overtime opportunities, placed her under the supervision of a Sergeant, removed her supervisory responsibilities, reassigned her from a private office to the front desk, assigned her too many duties, yelled at her at least once, told her to clean the basement once, and temporarily lowered her Evaluation score from a "4" to a "3" constitutes more than petty slights and trivial inconveniences. Accordingly, pursuant to the NYCHRL, Plaintiff has shown sufficiently that she was subjected to a hostile work environment while she worked under Yanosik between November 2004 and August 2006 and between May 2008 and October 2008. (See supra Part II.C.1 (considering Yanosik's alleged behavior between November 2004 and August 2006 as part of Plaintiff's hostile work environment claim).)

Moreover, Plaintiff has raised an issue of material fact as to whether Yanosik engaged in this conduct at least in part because of Plaintiff's race or sex. The record contains evidence that Yanosik permitted Colgan, a Caucasian male lieutenant, to maintain his supervisory responsibilities while he was on

modified duty, and Defendants provide no legitimate,
nondiscriminatory reason for the discrepancy in Yanosik's
treatment of Colgan and Plaintiff. (See Avallone Decl. Ex. FF;
Pl.'s Resp. Defs.' 56.1 Stmt. ¶¶ 58-59; Meyer Dep. 43:12-16,
65:10-24; see generally Defs.' Mem.; Defs.' Reply; Defs.' 56.1
Stmt.) Plaintiff also provides evidence that Yanosik denied her
the opportunity to earn overtime but permitted Caucasian male
lieutenants to earn significant amounts of overtime between 2004
and 2006. (Pl.'s 56.1 Stmt. ¶¶ 49-50; Meyer Dep. 39:25-40:22.)
Defendants do not offer a legitimate, nondiscriminatory reason
for this discrepancy. (See Defs.' Mem. 10-11; see generally
Defs.' Mem.; Defs.' Reply; Defs.' 56.1 Stmt.) Yanosik's
divergent treatment of Plaintiff and the Caucasian male
lieutenants he supervised creates an issue of fact as to whether
he subjected Plaintiff to a hostile work environment on the
basis of her race and her sex.

Accordingly, Defendants' Motion for Summary Judgment as to
Plaintiff's NYCHRL hostile work environment claim is DENIED.


D. Retaliation Claims

1. Title VII and NYSHRL Claims

Plaintiff alleges that she suffered unlawful retaliation
following her complaints of discrimination to the OEEO on June

20 and August 4, 2008.[11] (Pl.'s Opp'n 18-19.) Plaintiff claims

that Defendants retaliated against her by denying her overtime,

subjecting her to a hostile work environment,[12] finding her

---

[11] Plaintiff's Complaint refers to an additional OEEO complaint
made in February 2007. (Compl. ¶ 31.) However, Plaintiff has
adduced no evidence of that complaint, nor does Plaintiff's
Opposition address the argument to that end in Defendants'
memorandum in support of summary judgment. (See Defs.' Mem. 18;
see generally Pl.'s Opp'n.) "[A]rguments not made in opposition
to a motion for summary judgment are deemed abandoned."
Plahutnik v. Daikin Am., Inc., 912 F. Supp. 2d 96, 104 (S.D.N.Y.
2012); see Jain v. McGraw-Hill Cos., Inc., 827 F. Supp. 2d 272,
280 (S.D.N.Y. 2011) (holding that plaintiff abandoned six claims
when her opposition papers failed to respond to defendants'
arguments on those claims); Senno v. Elmsford Union Free Sch.
Dist., 812 F. Supp. 2d 454, 468 (S.D.N.Y. 2011) ("Plaintiff did
not address this argument in his opposition papers, which
operates as an abandonment of the argument."). Plaintiff has
therefore abandoned any claim premised on the alleged February
2007 complaint to OEEO. Plaintiff also alleges that she lodged
"numerous complaints of discrimination" that constitute
protected activity under Title VII. (Pl.'s Opp'n 18.) However,
while "[c]omplaints about conduct clearly prohibited by the
statute need not mention discrimination or use particular
language . . . , ambiguous complaints that do not make the
employer aware of alleged discriminatory misconduct do not
constitute protected activity." Int'l Healthcare Exch., Inc. v.
Global Healthcare Exch., LLC, 470 F. Supp. 2d 345, 357 (S.D.N.Y.
2007) (citations omitted). Only Plaintiff's OEEO filings provide
notice to Defendants of the allegedly discriminatory nature of
the events complained-of. (See Avallone Decl. Exs. HHH, KKK,
MMM, NNN, PPP.) Accordingly, the Court considers as protected
activity only Plaintiff's June 20 and August 4, 2008 OEEO
complaints.

[12] Plaintiff does not assert a claim for retaliatory failure to
promote in her Complaint. (See generally Compl.) Defendants
nevertheless move against such a claim, and Plaintiff's
Opposition brief fails to respond in any way. (Def.'s Mem. 20-
21; see generally Pl.'s Opp'n 18-21.) Thus, to the extent
Defendants were on notice of a retaliatory failure to promote
claim, the Court deems it abandoned.

guilty as to the disciplinary charges against her and in

terminating her based on those charges.[13]

  "Federal and state law retaliation claims are reviewed

under the burden-shifting approach of McDonnell Douglas." Kwan,

737 F.3d at 843. "Under the first step of the McDonnell Douglas

framework, the plaintiff must establish a prima facie case of

retaliation by showing 1) 'participation in a protected

activity'; 2) the defendant's knowledge of the protected

activity; 3) 'an adverse employment action'; and 4) 'a causal

---

[13] Plaintiff's Complaint does not explicitly allege that
Defendants proffered disciplinary charges against her,
prosecuted her on those charges, found her guilty of those
charges, or terminated her in retaliation for her complaints of
race and/or sex discrimination. (See generally Compl.; but see
Compl. ¶ 35 (asserting that disciplinary charges were proffered
in retaliation for First Amendment protected activities, claims
that Plaintiff has now withdrawn).) Plaintiff's opposition brief
nevertheless cites each of the above as grounds for her
retaliation claims. (Pl.'s Opp'n 19-20.) "A party generally may
not 'assert a cause of action for the first time in response to
a summary judgment motion.'" LeBlanc v. United Parcel Serv., No.
11 Civ. 6983, 2014 WL 1407706, at *17 (S.D.N.Y. Apr. 11, 2014)
(quoting Greenidge v. Allstate Ins. Co., 312 F. Supp. 2d 430,
436-37 (S.D.N.Y. 2004), aff'd, 446 F.3d 356, 361 (2d Cir.
2006)). Under Fed. R. Civ. P. 15(b), however, "a district court
may consider claims outside those raised in the pleadings so
long as doing so does not cause prejudice." Cruz, 202 F.3d at
569. Defendants have moved for summary judgment as to
retaliation claims based on the finding of guilt and Plaintiff's
termination, and accordingly will not be prejudiced by the
Court's consideration of those claims. But Plaintiff's Complaint
did not place Defendants on notice of retaliation claims based
on proffering or prosecuting the disciplinary charges (nor are
those claims viable, as those events predate Plaintiff's 2008
OEEO complaints), and those claims are therefore untimely and
waived.

connection between the protected activity and the adverse employment action.'" Id. at 844 (citation omitted).

Title VII's "antiretaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 64 (2006). Instead, an adverse employment action in the retaliation context requires a plaintiff to "show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Id. at 68 (citation omitted). "[A]ctions that are trivial harms – i.e., those petty slights or minor annoyances that often take place at work and that all employees experience – are not materially adverse." Rivera v. Rochester Genesee Reg'l Transp. Auth., 743 F.3d 11, 25 (2d Cir. 2014) (citation and alteration omitted). "[M]aterial adversity is to be determined objectively, based on the reactions of a reasonable employee." Id. at 25. "But 'context matters, as some actions may take on more or less significance depending on the context,' and 'alleged acts of retaliation must be evaluated both separately and in the aggregate, as even trivial acts may take on greater significance when they are viewed as part of a larger course of conduct.'" Id. (citations and alterations omitted).

"[I]f the plaintiff meets this burden, the defendant employer must then articulate a legitimate, non-discriminatory reason for its adverse employment action." Tepperwien v. Entergy Nuclear Operations, Inc., 663 F.3d 556, 568 n.6 (2d Cir. 2011). The Supreme Court has recently held that if the employer does so, the plaintiff "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer" for his or her Title VII claim to survive. Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2534 (2013). Although it is not yet clear whether the "but-for" standard applies to NYSHRL claims or whether Plaintiff need only "demonstrate that a retaliatory motive was 'a substantial or motivating factor behind the adverse action,'" see Kwan, 737 F.3d at 846 n.5, 847 n.7 (citation and alteration omitted), the Court need not address which standard applies because on this record, the distinction does not alter the Court's conclusions.

Defendants argue that Plaintiff is unable to establish a prima facie case of retaliation as to the alleged denial of overtime between May 2008 and October 2008 because she was the third highest overtime earner among the five lieutenants assigned to BMS from January 2007 through July 2008. (Defs.' Mem. 20.) However, Plaintiff correctly notes that this figure is of limited use because Yanosik only returned as her supervisor in May 2008. (Pl.'s Resp. Defs.' 56.1 Stmt. ¶ 83.) Indeed,

Plaintiff's pay stubs indicate that the only overtime she accumulated between May 2008 and October 2008 was approximately twenty-nine hours between April 27, 2008 and May 10, 2008. (Avallone Decl. Ex. FFF.)

While a sudden decrease in Plaintiff's overtime is not sufficient to make out a prima facie case of disparate treatment on the basis of sex or race absent evidence of the overtime earned by other BMS lieutenants, see supra Part I.B.1, the causation element of Plaintiff's retaliation claim may be established "by showing that the protected activity was closely followed in time by the adverse employment action." Gorzynski, 596 F.3d at 110 (citation omitted). Plaintiff has failed to raise such an inference here. Plaintiff earned no overtime after May 10, 2008, approximately forty days prior to her initial complaint to the OEEO. Even drawing all reasonable inferences in favor of Plaintiff, no reasonable factfinder could conclude that Plaintiff's June 20 OEEO Complaint was a "but for" cause of the cessation of Plaintiff's overtime opportunities beginning on May 10. In other words, while temporal proximity is commonly used to raise an inference of causation in the retaliation context, the two events alleged here do not coincide in a manner that would permit such an inference.[14]

---

[14] Plaintiff's own allegations undermine an inference of causation with respect to her claim of retaliatory overtime

Plaintiff next argues that she was subjected to a retaliatory hostile work environment following her complaints of discrimination. "To establish that a retaliatory hostile work environment constitutes a materially adverse change that might dissuade a reasonable worker from reporting activity prohibited by Title VII, a plaintiff must satisfy the same standard that governs hostile workplace claims by showing that the incidents of harassment following complaints were sufficiently continuous and concerted to have altered the conditions of his employment." Rasco v. BT Radianz, No. 05 Civ. 7147, 2009 WL 690986, at *15 (S.D.N.Y. Mar. 17, 2009); see also Gregory v. Daly, 243 F.3d 687, 701 (2d Cir. 2001), as amended (Apr. 20, 2001) ("[W]e apply the same standards in determining whether retaliatory harassment constitutes an adverse employment action as we do in assessing whether harassment imposed because of sex works an actionable alteration in the terms or conditions of employment.")

---

denials. Plaintiff alleges repeatedly, without mentioning retaliation, that Yanosik denied her overtime while he was assigned to BMS. (See Pl.'s 56.1 Stmt. ¶¶ 49, 60; Villar Dep. 212-13, 216-18.) Yanosik was reassigned to BMS in May 2008. (Pl.'s Resp. Defs.' 56.1 Stmt. ¶ 54.) Although the Record reveals no more specific date for his return to BMS, given that Plaintiff's overtime opportunities ceased entirely in early May 2008 and Yanosik returned as her supervisor at some point during the same month (and at least twenty days prior to Plaintiff's first OEEO Complaint), the more natural inference is that Yanosik's return – rather than Plaintiff's OEEO complaint – precipitated the decline in Plaintiff's overtime.

Plaintiff contends that, in retaliation for her complaints of discrimination, Yanosik placed her under the supervision of a Sergeant, removed her supervisory responsibilities, reassigned her from a private office to the front desk, assigned her too many duties, told her to clean the basement once, temporarily lowered her Evaluation score from a "4" to a "3," and denied her request to attend a mandatory training.[15] (Pl.'s Opp'n 20-21.) The Court has previously determined that the same allegedly discriminatory events did not rise to the level of a hostile work environment under Title VII or the NYSHRL. (See supra Part II.C.1.) Moreover, Plaintiff cannot rely on having her supervisory responsibilities removed or being placed under the supervision of a Sergeant as a basis for her retaliatory hostile

---

[15] Plaintiff cites several allegedly discriminatory acts in support of her retaliatory hostile work environment claim that do not warrant the Court's consideration. (See Pl.'s Opp'n 20-21.) First, in the absence of any evidence suggesting that NYPD placed Plaintiff on modified duty or kept her there for five years at least in part because of her race or sex, rather than as a matter of routine procedure pending a determination on the Charge lodged against Plaintiff, Plaintiff's modified duty status cannot be considered as part of her retaliatory hostile work environment claim. (Supra Part II.C.1); see Brennan, 192 F.3d at 318. Second, Plaintiff was suspended from July 7 to August 9, 2004, well before she engaged in any protected activity related to discrimination. (Pl.'s Resp. Defs.' 56.1 Stmt. ¶¶ 42, 45.) As a result, her suspension could not have been the result of any protected activity. Third, Plaintiff alleges that she was "falsely branded as engaging in money laundering" based on a July 9, 2004 letter; as that letter predates Plaintiff's protected activity, it cannot be a basis for her retaliation claims. (Pl.'s Opp'n 20; see Avallone Decl. Ex. RRR.)

work environment claim, as those events took place immediately upon her assignment to BMS and well before she complained of discrimination. (Pl.'s Resp. Defs.' 56.1 Stmt. ¶ 50.) The remaining incidents alleged by Plaintiff were the sort of petty and inconsequential slights that do not constitute a retaliatory hostile work environment at the summary judgment stage. See Rasco, 2009 WL 690986, at *15.

Plaintiff next argues that Defendants retaliated against her by finding her guilty on disciplinary charges and terminating her. Assuming arguendo that Plaintiff could establish a prima facie case as to NYPD's finding of guilt, Commissioner Weisel's findings following Plaintiff's trial constitute a legitimate, nondiscriminatory and nonretaliatory reason for finding Plaintiff guilty. (See supra Part II.B.1.) The record lacks evidence that would allow a reasonable jury to conclude that those findings were pretextual.

Plaintiff has, however, established a prima facie case of retaliation as to her termination. Defendants do not dispute the first three elements of Plaintiff's prima facie case: that Plaintiff engaged in protected activity of which they were aware, and that termination constitutes an adverse employment action. Defendants instead contend that Plaintiff cannot show a causal connection between her June 20, 2008 OEEO Complaint and her termination because the gap of seven to nine months between

her complaint, the February 6, 2009 recommendation that she be
terminated and Police Commissioner Kelly's April 7, 2009
approval of her termination is too long to permit an inference
of causal connection. (Defs.' Mem. 18-19.)

However, Plaintiff has established a sufficient causal
nexus to the decision to terminate her. While Commissioner
Weisel issued his final decision recommending that Plaintiff be
termination on February 6, 2009 and Police Commissioner Raymond
W. Kelly approved the decision and penalty of termination on
April 7, Weisel first recommended that Plaintiff be terminated
on October 6, 2008. (Defs.' 56.1 Stmt. ¶ 67.) Thus, the decision
to terminate Plaintiff arguably was made on October 6, only two
to three months after Plaintiff's OEEO Complaints of June 20 and
August 4, 2008. See Abrams v. Dep't of Pub. Safety, 764 F.3d
244, 254 (2d Cir. 2014) (finding that gap of "five months might
be enough to establish a prima facie case" of retaliation);
Summa v. Hofstra Univ., 708 F.3d 115, 128 (2d Cir. 2013)
(finding seven month gap between complaint and decision to
terminate "not prohibitively remote" in light of "the
combination of reasonably close temporal proximity and the
particular context"). Moreover, as discussed above, Plaintiff
has adduced evidence that the CPI Defendants provided to
Commissioner Weisel for use in determining the appropriate
penalty for Plaintiff differed from that provided to Plaintiff.

(See supra Part II.B.1.) Plaintiff made the request for her CPI on July 17, 2008, and both versions of that record were dated July 29. (Avallone Decl. Exs. I, J.) There is thus a close temporal proximity between Plaintiff's June 20, 2008 OEEO Complaint and procedural irregularities in the process that culminated in Plaintiff's termination. Plaintiff has accordingly satisfied the "de minimis" burden to show a causal connection as part of her prima facie case. Hicks v. Baines, 593 F.3d 159, 170 (2d Cir. 2010).

Commissioner Weisel's findings following Plaintiff's departmental trial again provide a legitimate, nondiscriminatory basis for Plaintiff's termination. However, as discussed at length supra Part II.B.1, the circumstances surrounding Commissioner Weisel's recommendation of termination included procedural irregularities in connection with Plaintiff's CPI and a discrepancy in penalty between Plaintiff and a similarly-situated male lieutenant, and a reasonable jury could conclude on that basis that Defendants' proffered rationale was pretextual. Moreover, as noted above, the evidence that Plaintiff's termination resulted from procedural irregularities lends further support to an inference of a retaliatory motivation for Plaintiff's termination. E.g., Eldaghar v. City of N.Y. Dep't of Citywide Admin. Servs., No. 02 Civ. 9151, 2008 WL 2971467, at *12-13 (S.D.N.Y. July 31, 2008) (finding evidence

65

of procedural irregularities to raise "genuine issues of material fact regarding . . . retaliatory motivation"). Taken together, the gap of two to three months between Plaintiff's OEEO Complaints and the decision to terminate her, along with the procedural irregularities that preceded that decision and the evidence that Plaintiff was subjected to disparate treatment, are sufficient to permit a reasonable jury to conclude that the decision to terminate Plaintiff would not have been made but-for Plaintiff's complaints of discrimination. See Kwan, 737 F.3d at 846 ("A plaintiff may prove that retaliation was a but-for cause of an adverse employment action by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action." (citations omitted)).

Accordingly, Defendants' Motion for Summary Judgment is GRANTED as to Plaintiff's Title VII and NYSHRL retaliation claims based on the denial of overtime, the creation of a retaliatory hostile work environment, and the finding of guilt related to disciplinary charges against Plaintiff. Defendants' Motion is also GRANTED as to Plaintiff's Title VII and NYSHRL race-based retaliation claims regarding her termination. However, Defendants' Motion for Summary Judgment is DENIED as to Plaintiff's Title VII and NYSHRL sex-based retaliation claims regarding her termination.

2. NYCHRL Claims

"[T]o prevail on a retaliation claim under the NYCHRL, the plaintiff must show that she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." Mihalik, 715 F.3d at 112 (citations omitted). "[A] defendant is not liable if the plaintiff fails to prove the conduct is caused at least in part by . . . retaliatory motives, or if the defendant proves the conduct was nothing more than 'petty slights or trivial inconveniences.'" Id. at 113 (citations omitted).

Even construing Plaintiff's claims liberally in light of the NYCHRL's remedial purposes, the record does not contain sufficient evidence for a reasonable jury to conclude that Plaintiff was denied overtime, subjected to a hostile work environment or found guilty of the disciplinary charge against her at least in part because of retaliatory motives. Summary Judgment on those claims is accordingly GRANTED.

However, the Court has already determined that Plaintiff's Title VII and NYSHRL sex-based retaliation claims regarding her termination are sufficient to withstand Defendants' Motion for Summary Judgment. As "federal and state civil rights laws [are] a floor below which the City's Human Rights law cannot fall," N.Y.C. Local Law No. 85 of 2005, at § 1 (Oct. 3, 2005), the

Court DENIES Summary Judgment, without further analysis, on

Plaintiff's NYCHRL retaliatory termination claim. See Clarke,

2013 WL 2358596, at *11 n.13 (denying motion to dismiss NYCHRL

retaliation claim, "without further analysis," because court had

denied defendant's motion to dismiss plaintiff's Title VII and

NYSHRL retaliation claims).


F. Claims Against Individual Defendants in Their Individual

Capacities Under 42 U.S.C. §§ 1981 and 1983[16]

Section 1981 "outlaws discrimination with respect to the

enjoyment of benefits, privileges, terms, and conditions of a

contractual relationship, such as employment." Patterson v.

---

[16] Plaintiff's claims under 42 U.S.C. §§ 1981 and 1983 against
the City and Yanosik and McGovern in their official capacities
fail. "[W]hen the defendant sued for discrimination under § 1981
or § 1983 is a municipality — or an individual sued in his
official capacity — the plaintiff is required to show that the
challenged acts were performed pursuant to a municipal policy or
custom." Patterson v. Cnty. of Oneida, 375 F.3d at 226
(citations omitted). The policy or custom need not be an express
rule or regulation; it is sufficient for a plaintiff to show
that the discriminatory conduct is so "persistent and widespread
. . . so permanent and well settled as to constitute a custom or
usage with the force of law." Sorlucco v. N.Y.C. Police Dep't,
971 F.2d 864, 870-71 (2d Cir. 1992). Plaintiff alleges a
"pattern and practice of discrimination" on the basis of race
and sex. (Villar Decl. ¶ 7.) However, Plaintiff does not specify
any allegedly discriminatory actions or practices that were
taken pursuant to an express municipal policy, nor would the
record support the conclusion that the allegedly discriminatory
actions of the defendants were so "persistent and widespread" to
be deemed a policy or custom with the force of law. Plaintiff's
§§ 1981 and 1983 claims against the City and official capacity
claims against Yanosik and McGovern are accordingly DISMISSED.

Cnty. of Oneida, 375 F.3d at 224. Section 1983 provides for an
action at law against a "person who, under color of any statute,
ordinance, regulation, custom, or usage, of any State . . .
subjects, or causes to be subjected, any citizen of the United
States . . . to the deprivation of any rights, privileges, or
immunities secured by the Constitution and laws." 42 U.S.C. §
1983. "Section 1983 'is not itself a source of substantive
rights'"; instead, it "merely provides 'a method for vindicating
federal rights elsewhere conferred,' such as those conferred by
§ 1981." Patterson v. Cnty. of Oneida, 375 F.3d at 225 (quoting
Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)). Indeed, "the
express cause of action for damages created by § 1983
constitutes the exclusive federal remedy for violation of the
rights guaranteed in § 1981 by state governmental units . . . ."
Id. (quoting Jett v. Dall. Indep. Sch. Dist., 491 U.S. 701, 733
(1989)).

    Although a § 1983 action may not be brought to vindicate
rights conferred only by a statute that contains its own
enforcement structure, such as Title VII, id., a Title VII
plaintiff may bring a concurrent § 1983 claim "if some law other
than Title VII is the source of the right alleged to have been
denied." Saulpaugh v. Monroe Cmty. Hosp., 4 F.3d 134, 143 (2d
Cir. 1993); see also Patterson v. Cnty. of Oneida, 375 F.3d at
225 ("'A Title VII plaintiff is not precluded from bringing a

concurrent § 1983 cause of action' . . . 'so long as the § 1983 claim is based on a distinct violation of a constitutional right.'") (citation omitted). Here, the sources of Plaintiff's § 1983 claim are 42 U.S.C. § 1981 and the U.S. Constitution. (Compl. ¶¶ 75, 83-84); see also Reed v. Conn. Dep't of Transp., 161 F. Supp. 2d 73, 85 (D. Conn. 2001) (noting that the source of plaintiff's § 1983 claim was § 1981).

Concurrent § 1981 claims asserted via § 1983 are evaluated according to the familiar burden-shifting approach of McDonnell Douglas. Jimenez v. City of New York, 605 F. Supp. 2d 485, 497 (S.D.N.Y. 2009). However, to make out a claim for individual liability under § 1981, "a plaintiff must demonstrate some affirmative link to causally connect the actor with the discriminatory action . . . . [P]ersonal liability under section 1981 must be predicated on the actor's personal involvement." Patterson v. Cnty. of Oneida, 375 F.3d at 229 (citation omitted). Similarly, a plaintiff must establish an individual defendant's personal involvement in the claimed violation to find him liable in his individual capacity under § 1983. Id. "A supervisory official personally participates in challenged conduct not only by direct participation, but by (1) failing to take corrective action; (2) creation of a policy or custom fostering the conduct; (3) grossly negligent supervision, or deliberate indifference to the rights of others." Rolon v. Ward,

345 F. App'x 608, 611 (2d Cir. 2009) (citing Hayut v. State

Univ. of N.Y., 352 F.3d 733, 753 (2d Cir. 2003)).

     The Second Circuit has not provided a clear answer

regarding the statute of limitations applicable to § 1981 claims

asserted via § 1983. A three-year limitations period has long

applied to such claims in New York. Patterson v. Cnty. of

Oneida, 375 F.3d at 225. However, two separate developments in

the law have since sown confusion. On December 1, 1990, Congress

enacted a catchall four-year statute of limitations for any

"civil action arising under an Act of Congress enacted after the

date of the enactment of this section." 28 U.S.C. § 1658(a).

Meanwhile, Congress in 1991 amended § 1981 to remove a bar on

claims alleging discriminatory conduct that took place after an

employment contract was formed. 42 U.S.C. § 1981(b); see Jones

v. R.R. Donnelley & Sons Co., 541 U.S. 369, 372-73 (2004)

(explaining that § 1981(b) was added in response to Patterson v.

McLean Credit Union, 491 U.S. 164 (1989)). In 2004, the Supreme

Court in Jones held that the amendment to § 1981 in turn

triggered 28 U.S.C. § 1658(a), and applied a four year statute

of limitations to claims arising under § 1981. Jones, 541 U.S.

at 374, 382 (holding that any action that was "made possible" by

a post-1990 enactment carries a four-year statute of

limitations, even if not a "wholly new cause of action").

Plaintiff's claims plainly allege post-formation conduct and thus are "made possible" by § 1981(b). There is an important distinction between this case and Jones, however. Jones involved discrimination claims against private actors; here, Plaintiff brings § 1981 claims against state actors and thus out of necessity employs the remedial vehicle provided by § 1983. The critical question here — one that has not been answered clearly by the Second Circuit — is therefore whether to apply § 1981's four-year limitations period or § 1983's three-year limitations period to Plaintiff's claims. See Patterson v. Cnty. of Oneida, 375 F.3d at 225 (applying a three-year statute of limitations three months after Jones was decided but without citing Jones); Harmon v. Patrolman's Benev. Ass'n, 199 F. App'x 46, 48 (2d Cir. 2006) (finding 14-year-old claims barred because "the applicable statute of limitations on Section 1983 claims is 3 years (or 4 years, if the claims are set forth under 28 U.S.C. § 1658(a))"); Lawson v. Rochester City Sch. Dist., 446 F. App'x 327, 328 (2d Cir. 2011) (noting the three-year period for § 1983 claims and the four-year period for § 1981 claims, but without deciding which to apply).

The broad construction given in Jones to the term "arising under" dictates that this Court follow suit. Accord Ortiz v. City of New York, 755 F. Supp. 2d 399, 404-08 (E.D.N.Y. 2010); Gilbert v. Dep't of Corr., No. 10-CV-1877, 2014 WL 6471415, at

*4-5 (D. Conn. Nov. 18, 2014). The Court in Jones rejected the argument that § 1658(a)'s catchall limitations period did not apply because Congress had enacted a new cause of action by defining the term "make and enforce contracts" in an existing statute, § 1981, rather than by creating a "new, stand-alone statute." Jones, 541 U.S. at 380-82. Here, as in Jones, § 1981(b) is a "necessary component, but not the vehicle for the action," Ortiz, 755 F. Supp. 2d at 408, and Plaintiff's claims are therefore "made possible by" § 1981. Jones, 541 U.S. at 382. Accordingly, the Court applies a four-year limitations period to Plaintiff's claims under § 1981 via § 1983, rendering timely those incidents occurring on or after August 21, 2005.

Plaintiff has established a prima facie case of race discrimination against Yanosik in his individual capacity pertaining to disparate treatment overtime denials in 2005.[17] Plaintiff and Meyer both maintain that Yanosik denied overtime to Plaintiff, the only Hispanic lieutenant at BMS, but permitted Caucasian lieutenants to work a significant amount of overtime. (Pl.'s 56.1 Stmt. ¶¶ 49-50; Meyer Dep. 39:25-40:22.) Plaintiff also submits evidence that bears this out and raises an

---

[17] "Section 1981 does not prohibit discrimination on the basis of gender." Giscombe v. New York City Dep't of Educ., No. 12-CV-464, 2013 WL 829127, at *7 n.3 (S.D.N.Y. Feb. 28, 2013) (quoting Anderson v. Conboy, 156 F.3d 167, 170 (2d Cir. 1998)).

inference that the discrepancy was discriminatory: she received only twenty-eight hours of overtime during 2005 while Colgan, a similarly-situated[18] Caucasian lieutenant, received 544 hours of overtime. (Avallone Decl. Ex. SS.) Defendants offer no legitimate, non-discriminatory rationale for the discrepancy. (See Defs.' Mem. 10-11; see generally Defs.' Mem.; Defs.' Reply; Defs.' 56.1 Stmt.) Plaintiff has accordingly raised a genuine issue of fact as to her claim under § 1981 and § 1983 that Yanosik was personally involved in denying her overtime opportunities on the basis of race.

However, Plaintiff cites to no evidence linking Yanosik to her termination, and accordingly does not raise an issue of material fact with respect to Yanosik's personal involvement in her alleged termination on the basis of sex. Because no reasonable jury could conclude that Yanosik was personally

---

[18] Plaintiff was on modified duty from her 2004 reinstatement on, while Colgan was placed on modified duty from December 28, 2005 to September 27, 2006. (Avallone Decl. Ex. FF.) Thus, during the period in 2005 for which Plaintiff submits evidence, Plaintiff was on modified duty while Colgan was not. However, Defendants offer no evidence that being on modified duty or being limited to non-enforcement duties would impact an NYPD member's eligibility to receive overtime, and indeed Plaintiff worked substantial overtime while Meyer was her supervisor at BMS. (Defs.' 56.1 Stmt. ¶ 57; Pl.'s Resp. Defs.' 56.1 Stmt. ¶ 57.) The Court accordingly concludes that Plaintiff and Colgan are similarly situated "in all material respects." Ruiz, 609 F.3d at 494; see also Beachum, 785 F. Supp. 2d at 94 ("The question of whether two employees are similarly situated is generally a triable issue for the fact-finder.").

involved in her termination, Summary Judgment is GRANTED with respect Plaintiff's termination-related claims against Yanosik in his individual capacity.

With respect to Defendant John McGovern, Plaintiff alleges only that he "slandered" Plaintiff by informing the U.S. Postal Investigation Service that its investigation had "disclosed that [Plaintiff] is engaged in money laundering activity." (Pl.'s 56.1 Stmt. ¶ 13; Avallone Decl. Ex. RRR.) McGovern did so in a letter dated July 9, 2004, and Plaintiff's claim is therefore untimely. (See Avallone Decl. Ex. RRR.) Nor has Plaintiff adduced any evidence to support an inference that the letter or its reference to "money laundering activities" were motivated by discrimination. Accordingly, Summary Judgment is GRANTED as to Plaintiff's claims against McGovern in his individual capacity.


G. Claims Against Individual Defendants in Their Individual Capacities Under the NYSHRL and NYCHRL

Plaintiff also seeks to hold Yanosik and McGovern liable in their individual capacities. Under the NYSHRL, an individual may be held liable as an "employer," but that is "limited to individuals with ownership interest or supervisors, who themselves, have the authority to hire and fire employees." Malena v. Victoria's Secret Direct, LLC, 886 F. Supp. 2d 349, 365-66 (S.D.N.Y. 2012). The NYCHRL, by contrast, "provides a

broader basis for direct individual liability than the NYSHRL"
because it applies to employees "regardless of ownership or
decisionmaking power." Malena, 886 F. Supp. 2d at 367 (quotation
marks omitted); see N.Y.C. Admin. Code § 8-107(1)(a)
(prohibiting discriminatory practices by "an employer or an
employee or agent thereof"). Actual participation in conduct
giving rise to a discrimination claim is required to support
liability under both the NYSHRL and NYCHRL. See Malena, 886 F.
Supp. 2d at 367.

It is likewise unlawful, pursuant to identical provisions
of the NYSHRL and NYCHRL, "for any person to aid, abet, incite,
compel or coerce the doing of any of the acts forbidden under
this [provision], or to attempt to do so." N.Y. Exec. Law
§ 296(6); N.Y.C. Admin. Code § 8-107(6). Aiding and abetting
liability "may extend to supervisors who failed to investigate
or take appropriate remedial measures despite being informed
about the existence of alleged discriminatory conduct." Morgan
v. N.Y. State Att'y Gen.'s Office, 2013 WL 491525, at *13.
However, "aiding and abetting 'is only a viable theory where an
underlying violation has taken place.'" Petrisch v. HSBC Bank
USA, Inc., No. 07 Civ. 3303, 2013 WL 1316712, at *21 (E.D.N.Y.
Mar. 28, 2013) (citation omitted). Finally, under both statutes,
"'an individual may not be held liable merely for aiding and
abetting his own discriminatory conduct but only for assisting

another party in violating' that law." <u>Malena</u>, 886 F. Supp. 2d
at 367-68 (citation and alterations omitted).

Plaintiff fails to raise a triable issue of fact with
respect to Defendant McGovern's individual liability under
either state or local law. Any claim premised on McGovern's July
9, 2004 letter is untimely, and Plaintiff has in any event
failed to adduce evidence of discriminatory animus behind the
letter or its contents. The record includes no other evidence of
McGovern's participation in the discrimination alleged by
Plaintiff, and Summary Judgment is accordingly GRANTED as to
Plaintiff's claims against McGovern in his individual capacity
under the NYSHRL and the NYCHRL.

As to Yanosik, Plaintiff has not shown that Yanosik had the
authority to hire or fire employees, and he is therefore not
subject to direct liability under the NYSHRL. Plaintiff has also
failed to raise a triable issue of fact with respect to aiding
and abetting liability under the NYSHRL or the NYCHRL. Yanosik
may not be held liable for "aiding and abetting his own
discriminatory conduct." <u>Malena</u>, 886 F. Supp. 2d at 367-68.
Here, Plaintiff's NYCHRL hostile work environment claim turns
entirely on Yanosik's conduct, precluding Yanosik from being
considered an aider or abetter in reference to that claim. And,
as noted <u>supra</u>, there is no evidence in the record that would

allow a reasonable jury to conclude that Yanosik participated in Plaintiff's allegedly discriminatory termination.

However, Plaintiff has shown sufficiently Yanosik's actual participation in creating a hostile work environment to raise a triable issue of fact as to Yanosik's direct liability under the NYCHRL. The Court has already found that Plaintiff's hostile work environment claim under the NYCHRL is sufficient to withstand Defendants' Motion for Summary Judgment. (See supra Part II.C.2.) Moreover, Yanosik is at the center of the hostile work environment alleged by Plaintiff, and there is evidence in the record from which a reasonable jury could infer that Yanosik engaged in this conduct because of Plaintiff's race or sex. (Id.) Thus, Summary Judgment on this claim is DENIED.

### III. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED in part and DENIED in part, as follows:

(1) Defendants' Motion for Summary Judgment on Plaintiff's Title VII, NYSHRL and NYCHRL disparate treatment claims regarding the proffering of disciplinary charges against Plaintiff, prosecution of those charges, finding of guilt on those charges, failure to promote, and denial of overtime is GRANTED, as is Defendants' Motion as to Plaintiff's Title VII, NYSHRL and NYCHRL race-based disparate treatment claim regarding her termination;

(2) Defendants' Motion for Summary Judgment is DENIED as to Plaintiff's Title VII, NYSHRL and NYCHRL sex-based disparate treatment claim regarding her termination;

(3) Defendants' Motion for Summary Judgment is GRANTED as to Plaintiff's Title VII and NYSHRL hostile work environment claim but DENIED as to Plaintiff's NYCHRL hostile work environment claim;

(4) Defendants' Motion for Summary Judgment as to Plaintiff's Title VII, NYSHRL and NYCHRL retaliation claims based on the denial of overtime, the creation of a retaliatory hostile work environment, and the finding of guilt related to disciplinary charges against Plaintiff is GRANTED, as is

Defendants' Motion as to Plaintiff's Title VII, NYSHRL and NYCHRL race-based retaliation claim regarding her termination;

(5) Defendants' Motion for Summary Judgment is DENIED as to Plaintiff's Title VII, NYSHRL and NYCHRL sex-based retaliation claim regarding her termination;

(6) Defendants' Motion for Summary Judgment is GRANTED as to Plaintiff's § 1981 and § 1983 claims brought against the City and Yanosik and McGovern in their official capacities;

(7) Defendants' Motion for Summary Judgment is GRANTED as to Plaintiff's § 1981, § 1983, NYSHRL and NYCHRL individual capacity claims against McGovern, and against Yanosik as to Plaintiff's termination and as to the creation of a hostile work environment under the NYSHRL; and,

(8) Defendants' Motion for Summary Judgment is DENIED as to Plaintiff's individual capacity claims against Yanosik as to the denial of overtime on the basis of race under § 1981 and § 1983, and as to the creation of a hostile work environment under the NYCHRL.

Accordingly, remaining are Plaintiff's Title VII, NYSHRL and NYCHRL sex-based disparate treatment and retaliation claims regarding her termination; Plaintiff's hostile work environment claim pursuant to the NYCHRL; and Plaintiff's individual capacity claims against Yanosik as to the denial of overtime on

the basis of race under § 1981 and § 1983 and as to the creation of a hostile work environment under the NYCHRL.

Proposed Requests to Charge, Proposed Voir Dire, a Joint Pre-trial Statement ("JPTS"), and Memoranda of Law addressing those issues raised in the JPTS shall be submitted no later than January 8, 2016. The JPTS shall conform to the Court's Individual Practices and Supplemental Trial Procedure Rules. Responses to the Memoranda shall be submitted no later than January 29, 2016. There shall be no replies.

SO ORDERED.

DATED:      September 29, 2015
            New York, New York

Deborah A. Batts
United States District Judge