```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
MARIA VILLAR,                       :
                                    :
     Plaintiff,                     :
                                    :   09-cv-7400 (JSR) (GWG)
         -v-                        :
                                    :   MEMORANDUM ORDER
CITY OF NEW YORK, et al.,           :
                                    :
     Defendants.                    :
                                    :
------------------------------------x
```

JED S. RAKOFF, U.S.D.J.

Yesterday, Susanne Toes of the New York Legal Assistance Group ("NYLAG") Clinic for Pro Se Litigants filed a Notice of Limited Scope Appearance of Pro Bono Counsel on behalf of pro se plaintiff Maria Villar.

Traditionally, federal courts have required that when an attorney appears on behalf of a client, that attorney must represent the client in all respects until judgment, unless relieved by the Court. The Local Rules in this District continue to embrace this approach. S.D.N.Y. Local Civ. R. 1.4 ("An attorney who has appeared as attorney of record for a party may be relieved or displaced only by order of the Court and may not withdraw from a case without leave of the Court granted by order. Such an order may be granted only upon a showing by affidavit or otherwise of satisfactory reasons for withdrawal or displacement and the posture of the case, including its position, if any, on the calendar, and whether or not the attorney is asserting a retaining

1

or charging lien. All applications to withdraw must be served upon the client and (unless excused by the Court) upon all other parties."); see also S.D.N.Y. Local Crim. R. 1.2 ("Once a notice of appearance has been filed, the attorney may not withdraw except upon prior order of the Court pursuant to Local Civil Rule 1.4.").

In criminal cases, counsel is, of course, constitutionally guaranteed, and limited-scope appearances are usually ill-advised.[1] In civil cases, however, some commentators have suggested that limited-scope representation may help mitigate access-to-justice problems. See, e.g., A.B.A. Standing Comm. on the Delivery of Legal Servs., An Analysis of Rules that Enable Lawyers to Serve Self-Represented Litigants 2-3 ("With the input of lawyers, self-represented litigants can benefit from getting legal advice specific to their factual issues. . . . Additionally, some self-represented litigants can optimize their outcomes if they have a lawyer advocate their interests before the tribunal. This may not be necessary for the entire litigation, but only for a limited purpose. The added input from lawyers not only assists

---

[1] To be sure, there are exceptions even in criminal cases. For example, courts sometimes appoint counsel for the limited purpose of advising a defendant regarding whether he should waive a potential conflict involving his full-scope attorney. And in certain post-judgment motions in criminal cases where defendants hold no constitutional right to court-appointed counsel, such as motions for sentence reduction under the First Step Act, limited-scope representation can prove highly beneficial to the client and the Court.

the litigants, but the courts, as well. The better the litigant is prepared, the more efficiently the court operates. While judges would no doubt prefer fully represented litigants, the choice in most venues is a self-represented litigant who is well prepared or one who is not."); Alicia M. Farley, <u>An Important Piece of the Bundle: How Limited Appearances Can Provide an Ethically Sound Way To Increase Access to Justice for Pro Se Litigants</u>, 20 Geo. J. Legal Ethics 563, 582-83 (2007) (describing the use of limited-scope representation in Washington, D.C. landlord-tenant disputes); James G. Mandilk, <u>Attorney for the Day: Measuring the Efficacy of In-Court Limited Scope Representation</u>, 127 Yale L.J. 1828 (2018) (based on review of every New Haven foreclosure case during 16-month period, finding that homeowners represented by limited-scope counsel on a single day had significantly better outcomes, not only on the counseled motion(s) occurring that day but also on their case as a whole, with a statistically significant increase in the likelihood that they kept their homes).

Recognizing the potential benefits of limited-scope representation for clients and for the courts, the American Bar Association and the authors of many states' ethical rules have endorsed such arrangements, in appropriate circumstances. <u>See, e.g.</u>, A.B.A. Model Rules of Prof'l Conduct, R. 1.2(c) ("A lawyer may limit the scope of the representation if the limitation is reasonable under the circumstances and the client gives informed

consent."); N.Y. Rules of Prof'l Conduct, R. 1.2(c) ("A lawyer may limit the scope of the representation if the limitation is reasonable under the circumstances, the client gives informed consent and where necessary notice is provided to the tribunal and/or opposing counsel."). Court systems have correspondingly begun to amend their policies and procedures. E.g., W.D.N.Y. Local Civ. R. 83.8(A)(1) (establishing a volunteer panel of pro bono attorneys and providing that "[t]he presiding Judge may appoint counsel for a specific limited purpose, such as for participating in mediation pursuant to the Court's Alternative Dispute Resolution Plan, amending pleadings, conducting discovery, drafting or responding to motions, or for any other purpose the presiding Judge determines will serve the interests of justice"); Administrative Order 285/16 (N.Y. Dec. 16, 2016) ("I declare it the policy of the Unified Court System [of the State of New York] to support and encourage the practice of limited scope legal assistance in appropriate cases, and to encourage judges and justices to permit attorneys to appear for limited purposes in civil cases under certain] circumstances[.]").

Indeed, while this District has not amended its Local Rules to address limited-scope appearances, we, too, have launched programs to appoint limited-scope counsel for pro se litigants in certain cases. See Rebecca Price, From the Southern District of New York, a Success Story: Limited-Scope Pro Se Program Provides

4

*Access and Justice*, A.B.A. Dispute Resolution Mag. 13 (Spring 2016), *available at* https://www.americanbar.org/content/dam/aba/publications/dispute_resolution_magazine/spring2016/4_price_southern_district_ny.pdf; S.D.N.Y., *Mediation/ADR*, *available at* https://www.nysd.uscourts.gov/programs/mediation-adr ("In certain cases the Court will appoint pro bono (free) counsel for pro se (unrepresented) parties only for mediation. Any requests for appointment of counsel should be made to the presiding judge.").

Despite the potential benefits of limited-scope appearances, one of the greatest risks of this practice is confusion. The traditional model of full-scope representation sets clear expectations for all involved regarding the durability of the attorney-client relationship; limited-scope representation does not. Therefore, for the sake of not only the limited-scope client and lawyer, but also the client's adversary, opposing counsel, and the Court, it is imperative that the scope of the attorney-client relationship be described with the utmost clarity.

This case illustrates the issue. Ms. Toes, complying with the requirements of the New York Rules of Professional Conduct, filed a notice on the docket informing the Court and opposing counsel that she is appearing "for the limited purpose of providing advice and representation in settlement negotiations, a settlement conference and/or a mediation through the Southern District's Alternative Dispute Resolution Program." ECF No. 95. While

5

reasonably detailed, this statement of the scope of representation leaves room for interpretation. On the one hand, the Notice appears to be overbroad because, read literally, it might mean that Ms. Toes will represent Ms. Villar during <u>any</u> settlement negotiations that might occur in this case (including, as an extreme example, if Ms. Villar proceeds to trial but engages in settlement negotiations during jury deliberations). On the other hand, the Notice appears to be unduly restrictive because, read literally, it might mean that if there are multiple settlement conferences before Magistrate Judge Gorenstein, Ms. Toes would only represent Ms. Villar at "a" singular such conference. This is not to impugn Ms. Toes or NYLAG, who provide a valuable public service and sought to comply with applicable ethical requirements in a changing area of law. But this case illustrates the need for greater specificity and clarity.

Accordingly, the Court construes the Notice to mean the following and, so construed, enters Ms. Toes's appearance:

- Ms. Toes will not represent Ms. Villar at any proceeding before the undersigned.

- Ms. Toes will not prepare any filings to be submitted to the undersigned.

- Ms. Toes will represent Ms. Villar at any and all settlement conference(s) and/or mediation(s) that Magistrate Judge Gorenstein may schedule, unless otherwise directed by the undersigned or by Judge Gorenstein.

- Ms. Toes may file written submissions with Judge Gorenstein regarding settlement.

- Although the Notice of Limited Appearance is not clear on this point, the Court construes Ms. Toes's representation to be limited to settlement negotiations between Ms. Villar and the defendants. To the extent Ms. Villar and Ms. Cronin, her former attorney, engage in settlement communications regarding plaintiff's former counsel's request for a charging lien, Ms. Villar will proceed pro se in such negotiations. Cf. Order, ECF No. 92, at 1 ("This settlement conference will relate exclusively to settlement between Ms. Villar and defendants. That is, it will not relate to the dispute between Ms. Villar's former attorneys and Ms. Villar regarding the attorney lien. Any settlement conference as to the attorney lien will be scheduled for another date in the event a settlement is reached between Ms. Villar and defendants.").

- Finally, Ms. Toes will represent Ms. Villar in all out-of-court settlement communications between Ms. Villar and the defendants until (1) Judge Gorenstein terminates the reference in this matter, (2) trial commences, or (3) the case is terminated. For avoidance of doubt, the defendants may communicate with Ms. Villar in connection with any matter other than settlement negotiations (e.g., trial, Ms. Cronin's motion for a charging lien, the City's motion to enforce the putative prior settlement agreement) without needing to involve Ms. Toes.

If Ms. Toes or Ms. Villar believes that this Memorandum Order misconstrues the intended limited-scope relationship, they should jointly call Chambers, with counsel for the City, on Monday, May 24. Once Ms. Toes has completed the representation, she must file a notice so stating and serve it upon her client and opposing counsel pursuant to Local Civ. R. 1.4.

SO ORDERED.

Dated: New York, NY
May 21, 2021

_____
JED S. RAKOFF, U.S.D.J.

7